REVISED JANUARY 30, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2008

Charles R. Fulbruge III
Clerk

No. 07-30615

DIANE RIDGELY; JUDY STURKEN;
DAVID BELLINGER; TAMICA DICKSON,
on Behalf of Themselves and All Others Similarly Situated

                                       Plaintiffs - Appellees

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF
HOMELAND SECURITY; R DAVID PAULISON,
Administrator of the Federal Emergency Management Agency;
and their successors in office

                                       Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

KING, Circuit Judge:

Plaintiffs, a class of individuals who received rental assistance payments from the federal government after Hurricanes Katrina and Rita, brought suit alleging various constitutional and statutory deficiencies in the process by which the rental assistance program is administered. In this interlocutory appeal, the Federal Emergency Management Agency challenges the district court's entry of

a preliminary injunction requiring the agency to make payments to class members until certain notice, hearing, and appeal procedures have been provided. For the following reasons, we VACATE the challenged provisions of the preliminary injunction and REMAND for further proceedings.

I.

In the aftermath of Hurricanes Katrina and Rita, the Federal Emergency Management Agency ("FEMA") has provided awards of "rental assistance" to individuals displaced from their homes on account of either storm. These awards consist of payments that recipients are to use to rent alternate housing. FEMA's practice has been to award rental assistance in a single payment designed to cover rent for three months. If a recipient is in need of assistance beyond this three month period, he may apply for additional awards, known as "continued rent assistance," which are also made in three month allotments. This appeal concerns alleged due process violations in the process by which FEMA makes eligibility determinations for these additional awards.

FEMA's provision of rental assistance is governed by the Stafford Act, 42 U.S.C. § 5121 et seq., and its implementing regulations. Under section 408 of the Stafford Act, an individual is eligible for rental assistance if he has been displaced from his home or his home has been rendered uninhabitable as a result of a major disaster. See 42 U.S.C. § 5174(b)(1). FEMA's implementing regulations establish additional eligibility criteria for individuals seeking an award of rental assistance or continued rent assistance. See 44 C.F.R. §§ 206.113; 206.114.[1]

When an individual first applies for assistance from FEMA after a disaster, the agency typically conducts an inspection of the applicant's residence. In the aftermath of Katrina and Rita, though, FEMA waived this home

---

[1] The relevant portions of section 408 and the regulations are set out in further detail below.

2

inspection requirement for applicants with pre-disaster residences in the most severely damaged areas, and simply provided each eligible applicant from those areas with a rental assistance award of $2,358. In other areas that were accessible for inspection, eligible applicants received awards in amounts based on a fair market rent valuation. Recipients were informed that the awards were intended to cover rent for three months, but that they could apply for additional awards in the future if necessary.

Owing to the massive devastation caused by Katrina and Rita, many recipients of rental assistance could not return to their pre-disaster residences or otherwise find permanent housing within the three months covered by their initial awards, and indeed some remain unable to do so. Accordingly, these individuals have found it necessary to apply for multiple awards of continued rent assistance. Each time they seek an additional award, they must comply with certain requirements. Pursuant to FEMA's regulations, they must establish a realistic housing plan and submit documentation showing their efforts to obtain permanent housing, provide past rent receipts to show that they have exhausted funds previously received from FEMA, and submit documentation showing a continuing need for assistance. See id. § 206.114. FEMA refers to this as the "recertification" process.

In its actual practices, FEMA has at times simplified or relaxed the recertification requirements for victims of Katrina and Rita. During the first round of recertifications in late November 2005, for example, FEMA required only a signed document stating that the applicant had used up his initial award and was in need of continued assistance. At other times, FEMA has required fuller documentation, including rent receipts. And on one occasion, FEMA waived the recertification requirements entirely and provided an award of

continued rent assistance to every individual who had been deemed eligible during the previous recertification.[2]

The four named plaintiffs received awards of rental assistance from FEMA after they were displaced from their homes by Katrina, but were later found ineligible for continued rent assistance. On behalf of themselves and a class of similarly situated individuals,[3] they filed this suit in the Eastern District of Louisiana, alleging that FEMA administers the rental assistance program in an arbitrary and inconsistent manner in violation of the due process clause, the Administrative Procedure Act, and the Stafford Act. Their complaint specifically charged that FEMA: (1) denies applications for continued rent assistance by issuing notices containing only confusing codes, instead of understandable explanations; (2) operates an unresponsive system that precludes effective challenges to FEMA decisionmaking before the loss of assistance; and (3) fails

---

[2] Counsel for FEMA explained at oral argument that this waiver was prompted by a last minute extension of the rental assistance program, which left FEMA with little time to carry out the recertification process before applicants would begin to exhaust their previous grants of assistance.

[3] This class is known as the "Section 408 Class" and is comprised of:

individuals who have been denied, or who will in the future be denied, continued Section 408 Assistance (as defined in the Complaint) and who meet each of the following conditions:

* * *

(4) Have received Section 408 Assistance administered by FEMA as a result of Hurricanes Katrina and/or Rita; and
(5) Have received, or will receive, notice from FEMA that FEMA has determined him or her to be ineligible for continued Section 408 Assistance; and
(6) Have ceased receiving, or may in the future cease receiving, Section 408 Assistance as a result of the termination or withholding by FEMA of such Assistance; and
(7) Have appealed, or will in the future appeal, FEMA's decision to terminate or withhold Section 408 Assistance.

Plaintiffs also sought to represent a class of individuals who previously were awarded assistance from FEMA and have received demands for recoupment of alleged overpayments. This class was certified by the district court, but FEMA has not challenged the provisions of the preliminary injunction relating to it.

to publish eligibility standards. Plaintiffs requested a declaratory judgment and permanent injunction.

Before FEMA could answer the complaint, plaintiffs moved for class certification and for a preliminary injunction. The district court entertained oral argument on these motions, but did not conduct an evidentiary hearing. Plaintiffs submitted a variety of materials to the court in support of their motions, including declarations from the named plaintiffs and other individuals describing their experiences with FEMA, as well as records of correspondence with FEMA. FEMA submitted a declaration explaining its administration of the rental assistance program. Additionally, as part of its motion to alter or stay the preliminary injunction, FEMA submitted a second declaration and a number of sample letters, notices, and other documents relating to the rental assistance program. On the whole, it is not an exaggeration to say that the materials submitted by the parties, together with the pleadings, paint two very different pictures of FEMA's administration of the rental assistance program.

On July 13, 2007, the district court granted class certification and issued a preliminary injunction as requested. The provisions of the preliminary injunction relevant to this appeal enjoin FEMA from:

> 1. Terminating or discontinuing Section 408 assistance to any Section 408 class member without providing . . . advance written notice of the reason(s) for the termination or discontinuance;
> 2. Terminating or discontinuing Section 408 assistance . . . prior to issuance of a written decision on the class member's appeal . . . ;
> 3. Failing to provide written notice to any Section 408 class member with an appeal pending . . . that they may have their assistance reinstated upon request, until FEMA has provided them with adequate written notice of the reason(s) for termination, an opportunity for a hearing, and a decision on their appeal;
> 4. Failing to reinstate Section 408 assistance to any Section 408 class member whose appeal . . . is currently pending and who requests reinstatement, until such time as FEMA has provided . . .

adequate written notice of the reason(s) for termination, an opportunity for a hearing, and a written decision on their appeal.[4]

In granting the preliminary injunction, the court found that plaintiffs had established a likelihood of success on the merits of their due process claims.[5] The court rejected FEMA's argument that plaintiffs lacked the property interest necessary to support a due process claim, and credited plaintiffs' contention that FEMA's existing procedures are inadequate. We reproduce here, in its entirety, the district court's analysis on the question of whether plaintiffs could show a property interest.

> [FEMA] also argue[s] that the plaintiffs have failed to state a due process claim because they do not possess a protectable property interest in "continuing" Section 408 benefits because, in the end, FEMA retains absolute discretion as to the initial receipt and termination of Section 408 benefits. [citation to record omitted] The plaintiffs have all been deemed eligible to receive Section 408 benefits. The Court finds that the fact that the eligibility must be continuing does not deprive the plaintiffs of the property right incurred with their "legitimate claim of entitlement to it." [Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).] The Court sees no relevant difference between the plaintiffs' property rights to Section 408 benefits and those rights belonging to the plaintiffs in [Mathews v. Eldridge, 424 U.S. 319 (1976)] (social security [disability] benefits), Goldberg v. Kelly, 397 U.S. 254 (1970) (welfare), Thompson v. Washington, 497 F.2d 626 (D.C. Cir. 1973) (public housing) and Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970) (public housing).

Because the question of whether plaintiffs can show a property interest turns in large part on the statutory and regulatory framework governing

---

[4] FEMA has not challenged, and we do not address, the remaining provisions of the injunction relating to the other class certified by the district court, consisting of individuals who have received repayment demands from FEMA.

[5] The court did not consider whether plaintiffs had also established a likelihood of success on their Administrative Procedure Act and Stafford Act claims.

FEMA's rental assistance program, we set out here the relevant statutory and regulatory provisions. Section 408 of the Stafford Act directly authorizes FEMA to provide rental assistance after a disaster. In pertinent part, it reads as follows:

> The President may provide financial or other assistance under this section to individuals and households to respond to the disaster-related housing needs of individuals and households who are displaced from their predisaster primary residences or whose predisaster primary residences are rendered uninhabitable . . . as a result of damage caused by a major disaster.
>
> * * *
>
> The President shall determine appropriate types of housing assistance to be provided under this section . . . based on considerations of cost effectiveness, convenience to the individuals and households, and such other factors as the President may consider appropriate.
>
> * * *
>
> The President may provide financial assistance to individuals or households to rent alternate housing accommodations, existing rental units, manufactured housing, recreational vehicles, or other readily fabricated dwellings.
>
> * * *
>
> No individual or household shall receive financial assistance greater than $25,000 under this section with respect to a single major disaster.
>
> * * *

42 U.S.C. § 5174 (internal subdivisions omitted). FEMA's implementing regulations establish additional eligibility factors for the receipt of rental assistance, and contain a variety of provisions designed to ensure that FEMA does not provide assistance to individuals who can meet their needs through other means:

> (a) Conditions of eligibility. In general, FEMA may provide assistance to individuals and households who qualify for such assistance under section 408 of the Stafford Act and this subpart. FEMA may only provide assistance:

(1) When the individual or household has incurred a disaster-related necessary expense or serious need in the state in which the disaster has been declared, without regard to their residency in that state;

(2) In a situation where the applicant has insurance, when the individual or household files a claim with their insurance provider for all potentially applicable types of insurance coverage and the claim is denied;

\* \* \*

(7) When the applicant agrees to refund to FEMA or the State any portion of the assistance that the applicant receives or is eligible to receive as assistance from another source;

(8) With respect to housing assistance, if the primary residence has been destroyed, is uninhabitable, or is inaccessible; and

(9) With respect to housing assistance, if a renter's primary residence is no longer available as a result of the disaster.

(b) Conditions of ineligibility. We may not provide assistance under this subpart:

(1) For housing assistance, to individuals or households who are displaced from other than their pre-disaster primary residence;

(2) For housing assistance, to individuals or households who have adequate rent-free housing accommodations;

(3) For housing assistance, to individuals or households who own a secondary or vacation residence within reasonable commuting distance to the disaster area, or who own available rental property that meets their temporary housing needs;

(4) For housing assistance, to individuals or households who evacuated the residence in response to official warnings solely as a precautionary measure and who are able to return to the residence immediately after the incident;

\* \* \*

(6) To individuals or households who have adequate insurance coverage and where there is no indication that insurance proceeds will be significantly delayed, or who have refused assistance from insurance providers \* \* \* .

44 C.F.R. § 206.113. A separate regulation explains that recipients of one award of assistance may apply for additional awards, and creates criteria for the provision of continued rent assistance:

8

(a) FEMA expects all recipients of assistance under this subpart to obtain and occupy permanent housing at the earliest possible time. FEMA may provide continued housing assistance during the period of assistance, but not to exceed the maximum amount of assistance for the program, based on need, and generally only when adequate, alternate housing is not available or when the permanent housing plan has not been fulfilled through no fault of the applicant.

(b) Additional criteria for continued assistance.

(1) All applicants requesting continued rent assistance must establish a realistic permanent housing plan no later than the first certification for continued assistance. Applicants will be required to provide[] documentation showing that they are making efforts to obtain permanent housing.

(2) Applicants requesting continued rent assistance must submit rent receipts to show that they have exhausted the FEMA rent funds, and provide documentation identifying the continuing need.

(3) FEMA generally expects that pre-disaster renters will use their initial rental assistance to obtain permanent housing. However, we may certify them, during the period of assistance, for continued rent assistance when adequate, alternate housing is not available, or when they have not realized a permanent housing plan through no fault of their own.

(4) FEMA may certify pre-disaster owners for continued rent assistance, during the period of assistance, when adequate, alternate housing is not available, or when they have not realized a permanent housing plan through no fault of their own.

* * *

Id. § 206.114. Finally, there is a limit on the time period for which FEMA may provide assistance:

Period of assistance. FEMA may provide assistance under this subpart for a period not to exceed 18 months from the date of declaration [that a disaster has occurred]. The Associate Director (AD) may extend this period if he/she determines that due to extraordinary circumstances an extension would be in the public interest.

Id. § 206.110(e).

We granted a stay pending our resolution of these interlocutory appeals,[6] which are before us pursuant to 12 U.S.C. § 1292(a)(1).

## II.

A preliminary injunction is an extraordinary remedy that should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 363 (5th Cir. 2003) (citing Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)). These four elements present mixed questions of law and fact; we leave factual findings undisturbed unless clearly erroneous, but review legal conclusions de novo. Guy Carpenter & Co. v. Provenzale, 334 F.3d 459, 463 (5th Cir. 2003). The ultimate decision to grant a preliminary injunction is reviewed for abuse of discretion. Id.

FEMA argues that plaintiffs have not demonstrated a likelihood of success on the merits and thus have not satisfied the first element for a preliminary injunction. Because the district court granted the injunction on the basis of its determination that plaintiffs had established a likelihood of success on the merits of their due process claims, and did not consider plaintiffs' other claims, only principles of due process are at issue here.

## III.

Plaintiffs have alleged that FEMA's administration of the rental assistance program violates the requirements of the Fifth Amendment's due process clause. To prevail on a due process claim, plaintiffs must show that: (1)

---

[6] FEMA initially filed a notice of appeal from the order granting the preliminary injunction. Later, it filed a second notice of appeal from the district court's dismissal of its motions to stay or alter the injunction. This second appeal has proceeded along with the first.

they possess a property interest that is protected by the due process clause, and (2) FEMA's procedures are constitutionally inadequate. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). Although this case has not yet progressed to trial, in their initial pleadings and declarations the plaintiffs have described an overly bureaucratic and frustratingly unresponsive agency that misapplies its own rules and standards, uses incomprehensible codes to inform applicants of its decisions on their requests for assistance, and fails to offer any meaningful review of those decisions on administrative appeal. To support a preliminary injunction, however, they must establish a likelihood of success on the merits. FEMA argues that plaintiffs have not met this requirement because they have not shown that they can establish a property interest in rental assistance benefits.

We agree that at this time plaintiffs have not made this required showing. Standing alone, the statute and regulations governing the rental assistance program are not sufficient to create a property interest. The possibility remains that plaintiffs can establish a property interest based on FEMA's policies and practices in implementing the statute and regulations to provide rental assistance. However, facts regarding these matters have not been sufficiently developed to allow us to decide this point. Therefore, we must vacate the challenged portions of the injunction and return this case to the district court for further development.

A.    Property Interest

It has long been recognized that benefits distributed by the government are a form of property protected by the due process clause. See Goldberg, 397 U.S. at 262 & n.8. However, not all government benefits programs create constitutionally recognized property interests. A property interest only arises when an entitlement to benefits exists. Roth, 408 U.S. at 577. As the Supreme Court has explained, to have a property interest in a government benefit, "a

person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.

Property interests are not created by the constitution itself. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source" and "that secure certain benefits and that support claims of entitlement to those benefits." Id. The "mere existence of a governmental program or authority empowered to grant a particular type of benefit to one such as the plaintiff does not give the plaintiff a property right, protected by the due process clause, to receive the benefit, absent some legitimate claim of entitlement—arising from statute, regulation, contract, or the like—to the benefit." Blackburn v. City of Marshall, 42 F.3d 925, 941 (5th Cir. 1995) (emphasis in original).

Plaintiffs claim a property interest in continued rent assistance based on section 408 of the Stafford Act and its implementing regulations. To determine whether statutes or regulations create a protected property interest, we must ask whether they place "substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249 (1983). Absent such limitations on FEMA's discretion, section 408 and the regulations cannot create a property interest, as "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 462–63 (1989)).

According to plaintiffs, section 408 and the regulations create an entitlement because they set out criteria that make an award of benefits "mandatory and not discretionary" for all eligible applicants. In determining whether statutes and regulations limit official discretion, the Supreme Court has explained that we are to look for "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates

are present, a particular outcome must follow." Thompson, 490 U.S. at 463. Unfortunately for plaintiffs, such mandatory language is wholly absent from section 408 and the regulations.

As FEMA points out, section 408 does not require that payments of rental assistance be offered after a disaster or that payments be made in any specific amounts when assistance is offered. Instead, it contains only a permissive grant of authority to FEMA (through the President) to provide rental assistance. See 42 U.S.C. § 5174(c)(1)(A)(i) ("The President may provide financial assistance to individuals or households to rent alternate housing accommodations . . . .") (emphasis added). Under the language of section 408, an individual has no right to receive rental assistance, even if assistance is being offered and he meets the eligibility criteria.

Similarly, FEMA's implementing regulations are written in entirely permissive terms. The regulations state only that "FEMA may provide assistance to individuals and households who qualify for such assistance," and that "FEMA may provide continued housing assistance." 44 C.F.R. §§ 206.113(a); 206.114(a) (emphases added). Like section 408 itself, the regulations nowhere provide that an individual has a right to receive assistance if he meets the eligibility criteria. There is simply no indication that the regulations constrain FEMA's discretion to the point that it is bound to provide assistance to all eligible individuals.

Thus, although section 408 and the regulations set out eligibility criteria for the receipt of continued rent assistance, they contain no "explicitly mandatory language" that entitles an individual to receive benefits if he satisfies that criteria. Because no "specific directives" limit FEMA's discretion by compelling it to provide assistance upon a showing of eligibility, these provisions do not give rise to a property interest.

Still, plaintiffs assert a property interest based on the fact that they have previously received awards of rental assistance from FEMA. Citing Goldberg v. Kelly and Mathews v. Eldridge, plaintiffs argue that once an individual's eligibility has been established under a benefits program's "threshold criteria," that individual acquires a property interest in continued payment of benefits.

In Goldberg, the plaintiffs were welfare recipients who received weekly or monthly payments. 397 U.S. at 256. When these individuals brought suit alleging that termination of their benefits without prior notice and a hearing constituted a violation of due process, the Supreme Court found a statutorily created property interest in the continued receipt of those benefits. Id. at 261–63. Likewise, in Mathews, the Court held that recipients of monthly social security disability payments possessed a property interest in continued receipt of their benefits. 424 U.S. at 332. In both cases, then, individuals had entitlements in recurring payments made at regular intervals, such that the stream of payments could not be terminated without due process. According to plaintiffs, the "key factor" in Goldberg and Mathews was that a "legitimate expectation in receiving benefits (and, thus, in receiving continuing benefits) had been established by meeting the threshold criteria for the benefits' receipt." Plaintiffs argue that because they were all deemed eligible to receive rental assistance at one point—which they liken to the Goldberg and Mathews plaintiffs meeting the "threshold criteria" for their respective programs—they similarly have a legitimate expectation of receiving continued rent assistance.

The district court was apparently sympathetic to this argument. In the proceedings below, FEMA argued that plaintiffs' claim to a property interest failed because it retained discretion in distributing rental assistance. In response, the district court stated that "[t]he plaintiffs have all been deemed eligible to receive Section 408 benefits," and that it saw "no relevant difference between the plaintiffs' property rights to Section 408 benefits and those rights

14

belonging to the plaintiffs in" Goldberg and Mathews.[7] As we explain, though, there are relevant differences between the claims to benefits held by the individuals in those cases and plaintiffs in the instant case. Ultimately, plaintiffs' prior receipt of rental assistance can only give rise to a property interest in continuing benefits if the rental assistance program is one in which, upon an initial showing of eligibility, recipients become entitled to a stream of payments.

Neither Goldberg nor Mathews explains in much detail why the plaintiffs in those cases possessed property interests in the continued receipt of benefits.[8] In Goldberg, however, the Court stated that the welfare benefits were "a matter of statutory entitlement for persons qualified to receive them," 397 U.S. at 262, and the Court subsequently made clear in Roth that property interests arise from independent sources of law, such as statutes or regulations, that support a legitimate claim of entitlement to benefits, 408 U.S. at 577. In other words, the welfare and disability recipients in Goldberg and Mathews, respectively, only had a property interest in continuing benefits because independent sources governing the programs entitled them to recurring payments upon an initial

---

[7] This view of the rental assistance program as similar to the programs in Goldberg and Mathews also explains the phrasing of the preliminary injunction, which enjoins FEMA from "[t]erminating or discontinuing" assistance. It would only make sense to use these terms if the district court believed that plaintiffs, like the individuals in Goldberg and Mathews, were entitled to receive an ongoing stream of payments. Otherwise, there would be nothing to terminate or discontinue.

[8] This is understandable, since in both cases the existence of a property interest was undisputed. See Mathews, 424 U.S. at 332 ("The Secretary does not contend that procedural due process is inapplicable to termination of Social Security benefits. He recognizes . . . that the interest of an individual in continued receipt of those benefits is a statutorily created 'property' interest protected by the Fifth Amendment."); Goldberg, 397 U.S. at 261–62 ("Appellant does not contend that procedural due process is not applicable to the termination of welfare benefits.").

showing of eligibility.[9] Thus, while we agree that some benefits programs may give rise to a property interest in a stream of benefits, plaintiffs still must demonstrate that the rental assistance program at issue in this case is in fact such a program. To do so, they must identify some source that entitles them to receive recurring rental assistance payments upon an initial showing of eligibility.

We think it clear that the language of section 408 and the regulations provides no such entitlement. As discussed above, section 408 and the regulations do not mandate the payment of a single award of continued rent assistance to eligible individuals, much less a continuing stream of payments. That plaintiffs have previously been found eligible for awards of rental assistance or continued rent assistance is of no matter. By definition, every applicant for continued rent assistance will be an individual who has previously been found eligible for a rental assistance award. The fact remains that nothing in the regulations compels FEMA to provide benefits on a continuing basis, as is required to create such an entitlement.[10]

This conclusion is buttressed by a comparison to the social security disability statute, which does create an entitlement to continuing benefits. That statute explicitly states that

---

[9] The statute governing the federal welfare program was amended in 1996 to remove the source of the entitlement in Goldberg. See Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105 (1996).

[10] We note that FEMA has adopted a practice of disbursing awards of continued rent assistance in single payments designed to cover rent for three months. Plaintiffs argue that this informal practice does not negate their expectation of receiving continuing assistance, and state that "[t]he three-month-period is not set by statute or regulation." This latter point is of course correct, as the statute and regulations specify no particular form that continued rent assistance must take—FEMA could choose to disburse continued rent assistance in a single payment designed to cover rent for any number of months, as a stream of weekly or monthly payments, or in any other form it desires, subject only to the $25,000 statutory cap and 18-month time limit.

[e]very individual who * * * is under a disability . . . shall be entitled to a disability insurance benefit . . . for each month beginning with the first month . . . in which he becomes so entitled to such insurance benefits . . . and ending with . . . the month in which he dies, the month in which he attains retirement age [at which point the benefits are converted to retirement benefits] . . . , or . . . the termination month.

42 U.S.C. § 423(a). The statute then provides that benefits may only be terminated upon a showing that the disability has ceased or that the individual is able to engage in substantial gainful activity, in a process in which the agency bears the burden of supplying substantial evidence that a reason for termination exists. Id. § 423(f); see Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002).

The mandatory language found in the social security disability statute makes it clear that an individual who satisfies the eligibility criteria has a legitimate expectation of receiving continuing benefits. By the terms of the statute, an eligible individual "shall be entitled" to receive monthly payments until he dies, his benefits are converted to retirement benefits, or the agency proves that he no longer meets the eligibility requirements. It is equally clear, in contrast, that the rental assistance program established by section 408 and the regulations creates no such entitlement to continuing benefits upon an initial showing of eligibility. FEMA's rental assistance program simply does not work in the same way that the disability program does. Upon demonstrating eligibility for rental assistance, an individual can point to nothing in section 408 or the regulations that entitles him to receive recurring payments until he is proved to no longer be eligible.[11] Rather, if he hopes to receive even a single

---

[11] We are not persuaded by plaintiffs' argument that the $25,000 statutory cap and the 18-month regulatory time limit on the provision of assistance create a reasonable expectation in recipients that FEMA will provide "continuing" assistance for as long as they remain eligible. These provisions do not require FEMA to disburse assistance up to the maximum extent allowable or for the longest time possible. Section 408 simply states that "[n]o individual or household shall receive financial assistance greater than $25,000 under this section with respect to a single major disaster"; it does not state that individuals are entitled

additional award, the burden is on him to apply for recertification and meet the regulatory requirements. In this context, it is unsurprising that no termination provision analogous to the one in the disability statute can be found in section 408 or the regulations, as such a provision would only be necessary if there were a stream of benefits to terminate.

Plaintiffs nonetheless argue that a separate section of the Stafford Act, which sets forth "Congressional findings and declarations," shows that FEMA will provide continued rent assistance to individuals for as long as they remain eligible. This section states that

> [i]t is the intent of the Congress, by this chapter, to provide an orderly and continuing means of assistance by the Federal Government to State and local governments in carrying out their responsibilities to alleviate the suffering and damage which result from such disasters by * * * providing Federal assistance programs for both public and private losses sustained in disasters[.]

42 U.S.C. § 5121(b) (emphasis added). Plaintiffs argue that FEMA must carry out this intent by providing assistance on a continuing basis for as long as disaster-related needs exist. But this argument reads too much into what is essentially a hortatory statement of purpose for the entire Stafford Act. Section 5121 contains no mandatory language compelling FEMA to provide continuing payments of rental assistance to all eligible applicants on an ongoing basis. It simply registers a general intent on the part of Congress. Without more, this provision cannot support a statutory entitlement to a stream of continued rent assistance payments when the specific statute and regulations that implement the rental assistance program contain no such directive and

---

to receive assistance up to that limit. 42 U.S.C. § 5174(h)(1). Likewise, the regulation establishing the 18-month period of assistance states only that FEMA "may provide assistance . . . for a period not to exceed 18 months from the date of declaration [that a disaster has occurred]." 44 C.F.R. § 206.110(e). Again, there is nothing that compels FEMA to provide benefits throughout the entire period of assistance.

leave the questions of what type of assistance to provide and how and when to provide it to FEMA's discretion.[12]

Thus far, we have determined that the language of the relevant statutes and regulations, standing alone, does not support plaintiffs' claim to a property interest. However, we cannot yet conclude that a property interest is entirely foreclosed, for it is also possible for a legitimate claim of entitlement to arise from "rules or understandings" created by an agency's policies or practices, even in the absence of explicitly mandatory statutory or regulatory language. See Perry v. Sinderman, 408 U.S. 593, 601–02 (1972). It may be the case that FEMA's policies in administering the rental assistance program require it to make awards of continued rent assistance to all eligible applicants.[13] If so, the agency may have sufficiently narrowed its discretion in the distribution of benefits to create a legitimate claim of entitlement in applicants. See Washington Legal Clinic for the Homeless v. Barry, 107 F.3d 32, 38 (D.C. Cir. 1997) ("[I]n certain circumstances property rights may arise from administrative 'rules or understandings.'"); Mahone v. Addicks Util. Dist. of Harris County, 836 F.2d 921, 931 (5th Cir. 1988) (suggesting that a property interest may be created in the absence of mandatory statutory language when an agency narrows its discretion "by custom or implementation of regulations").

Plaintiffs also argue that FEMA's practices in administering the rental assistance program "reinforce the continuing nature of section 408 assistance,"

---

[12] For similar reasons, we doubt that the Stafford Act's nondiscrimination provision can serve as the source of a property interest. See 42 U.S.C. § 5151(a).

[13] According to a declaration and transcript excerpt submitted by plaintiffs, a FEMA official testified in an earlier lawsuit that the initial eligibility decision for section 408 assistance was essentially automated, and that FEMA did not have discretion to refuse to award assistance if the criteria were met. FEMA could have the same policy with regard to applicants for continued rent assistance; however, this may be affected by FEMA's current finances, as there were indications that the policy of paying every eligible applicant was contingent upon FEMA receiving sufficient funds in its appropriations from Congress.

and therefore support a property interest in continued receipt of benefits. They contend, for example, that by providing notice of changes in the recertification criteria because it wished to protect recipients against "gaps" in assistance, FEMA created the basis for a reasonable expectation of continued assistance. However, some of the notices and letters from FEMA that are contained in the record feature disclaimers and warnings that would seem to dispel any notion that individuals are entitled to additional awards of continued assistance solely on account of having previously been found eligible for an award. One letter states that "[a]dditional assistance may be awarded in 3 month increments," but cautions applicants that they must provide additional documentation and rent receipts. Another warns in bold that "you will not be eligible for continued housing assistance beyond May 31, 2007 if you do not supply all of the above listed items."

In the end, we are somewhat limited in our review by the fact that the district court did not hold an evidentiary hearing or otherwise make any findings on these matters before granting the preliminary injunction. The record does contain various declarations from the named plaintiffs and other individuals who have been involved with the rental assistance program, as well as correspondence and other documents relating to FEMA's administration of the program. However, in many respects these sources provide conflicting accounts of how the rental assistance program is administered. Whether FEMA, by its policies and practices, has created a property interest in continued rent assistance is a fact-intensive question, and, given the limited factual development below, one we cannot answer. This court is simply not in a position to decide such matters for the first time on appeal. As things currently stand, then, plaintiffs have not established a substantial likelihood of successfully showing the property interest needed to support their due process claim, and we

must conclude that the district court abused its discretion in granting the preliminary injunction.

B.    Adequate Process

Although our conclusion above controls the outcome of this appeal, we write here to briefly call attention to some arguments and observations concerning adequacy of process that have emerged in the course of the proceedings before this court and that may be helpful to the district court on remand, should it determine that a property interest exists.

The terms of the preliminary injunction issued by the district court essentially require FEMA to make awards of continued rent assistance to individuals determined to be ineligible for such assistance until it has provided them with written notice of the reasons for ineligibility, an opportunity for a hearing, and a written decision on appeal.[14]  We recognize that the stay issued by this court prevented the parties from proceeding in the district court, with the effect that the exact requirements of the injunction were never fully explored. Echoing their arguments below, plaintiffs have indicated to us that they do not believe a trial-type evidentiary hearing to be necessary or even desirable for most individuals, and that informal procedures would be acceptable so long as FEMA provides adequate notice of its reasons for denying continued rent assistance.  Examination of the notice letters and other correspondence found in the record convinces us that FEMA could measurably improve the navigability of its processes by providing applicants with more understandable explanations of its ineligibility determinations.  Until a disappointed applicant is informed of the reasons that FEMA believes him to be ineligible for assistance, including the factual basis underlying that decision, he simply has no way to "test the veracity

---

[14] The injunction has the same effect with regard to individuals who have already entered the appeal "pipeline," by requiring FEMA to "reinstate" assistance upon request to individuals who have previously been determined ineligible but have appeals pending, until the same procedures have been provided.

of the agency's findings against him." Billington v. Underwood, 613 F.2d 91, 94 (5th Cir. 1980). Regardless of the outcome of this case on remand, we urge FEMA to adopt such practices as are sufficient to provide applicants with a meaningful understanding of the agency's decisions on their requests for assistance at the earliest possible opportunity.

With respect to the aspects of the injunction that require FEMA to make additional payments to individuals who have been determined ineligible for continued rent assistance (or who never submitted the documentation required to make a recertification determination), FEMA has argued that as a general matter, the Constitution's guarantee of due process cannot be held to require that benefits be distributed to an individual before eligibility for the benefits has been found, although it can of course require that appropriate notice and procedure be provided. Plaintiffs assert that requiring FEMA to make additional continued rent assistance payments lies within the district court's equitable authority, but this argument appears to assume that the rental assistance program is one in which a showing of eligibility for one award creates an entitlement to recurring awards.[15] In light of the general reluctance on the part of courts to order that benefits be provided to individuals who have not yet demonstrated eligibility, see Heckler v. Lopez, 463 U.S. 1328, 1331 (1983) (Rehnquist, J., in chambers), we have our doubts that the payments contemplated by the injunction could withstand scrutiny.

IV.

The challenged provisions of the preliminary injunction are VACATED; this case is REMANDED to the district court for further proceedings consistent with this opinion.

---

[15] The idea then being that the district court is not really requiring FEMA to make new payments, it is simply prohibiting the termination of an existing stream of payments.

DENNIS, Circuit Judge, specially concurring and concurring in the judgment:

I concur in Parts I, II, III-A, and IV of the majority opinion and in the judgment. I do not think it necessary or desirable to reach the subjects in Part III-B and therefore do not join it.