# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2014

Lyle W. Cayce
Clerk

No. 14-20188

LARRY BISHOP; CYNTHIA BISHOP; DEBORAH CLARK; GEORGE
CLARK; GARY MCGREGOR; TERI MCGREGOR; JOHN STANFORD;
CAROL SEVERANCE; KRIS B. HALL; HOLLY J. JONES,

> Plaintiffs - Appellants

v.

CITY OF GALVESTON; JEFF COLLEY; STEVEN C. MCCRAW; GREG
PEKAR; HILDA SOPER,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-4152

Before JOLLY and COSTA, Circuit Judges, and ROSENTHAL, District
Judge.\*

PER CURIAM:\*\*

This case arose after Hurricane Ike, the latest in the long and destructive history of natural disasters that have struck Galveston, Texas. The ten

---

\* District Judge of the Southern District of Texas, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20188

Plaintiffs in this lawsuit applied to have their damaged beachfront homes purchased with federal disaster relief funds distributed through the State of Texas and the City of Galveston. When Defendants—the City of Galveston and a number of officials in the Texas Department of Public Safety—failed to purchase their properties with the federal funds, Plaintiffs brought this lawsuit asserting due process claims. The district court held that Plaintiffs lacked a property interest in the funds that would implicate the protections of the Due Process Clause. For the reasons discussed below, we agree.

## I.

The Stafford Act authorizes the Federal Emergency Management Agency (FEMA) to provide property acquisition assistance in connection with "hazard mitigation measures which the President has determined are cost-effective and which substantially reduce the risk of future damage, hardship, loss, or suffering in any area affected by a major disaster." 42 U.S.C. § 5170c(a)–(b). Pursuant to that authority, FEMA's Hazard Mitigation Grant Program (HMGP) "provides grants to states and local governments to implement long-term hazard mitigation measures after a major disaster declaration." FEMA, *Hazard Mitigation Grant Program*, http://www.fema.gov/hazard-mitigation-grant-program (last visited Dec. 12, 2014). Under the HMGP, flood-prone properties may be purchased for the purpose of conserving "natural floodplain functions." FEMA, *Hazard Mitigation Assistance Unified Guidance* 93 (June 1, 2010).[1] In order to receive funding under this program, jurisdictions within Texas apply to the Texas Department of Public Safety's (DPS) Division of Emergency Management,

---

[1] *Available at* http://www.fema.gov/media-library-data/20130726-1737-25045-4275/final_june_1_2010_hma_unified_guidance_09252012a_508.pdf.

which combines the local applications and requests the total funding from FEMA.[2]

When Hurricane Ike hit in September 2008, Galveston County was declared a disaster area. As a result, the area qualified for HMGP funding. Plaintiffs are owners of Ike-damaged homes in the Sands of Kahala Beach subdivision on the west end of Galveston Island who sought to have their properties purchased with HMGP funds.

The City of Galveston began the application process for HMGP funds in early 2009. Plaintiffs' properties qualified for acquisition. The City then applied to the State for HMGP funds and was awarded the grants at issue in this case. On July 31, 2009, the Texas Division of Emergency Management sent letters notifying the City of the grants and listing the approved projects, which included Plaintiffs' properties. The letters stated that the projects "must be completed within twenty-four months from the project approval date," ROA 73, and that "[o]nce drawn down by the grantee, the funds must be distributed in this manner," ROA 508. Between September 2009 and January 2010, Plaintiffs entered into contracts with the City for the sale of their properties. The contracts, in accordance with FEMA's HMGP guidelines, required Plaintiffs to convey "marketable title to said property in fee simple, clear of all liens and encumbrances." *See* ROA 851; FEMA, *Hazard Mitigation Assistance Unified Guidance* 84. Under the terms of the grant, the City was required to complete its acquisition of the properties by July 23, 2011.

Around this time, Plaintiffs were involved in various disputes with other members of the Sands of Kahala homeowners' association (HOA). The HOA notified the City that the City would incur financial liability for HOA fees if it

---

[2] Texas DPS, *Hazard Mitigation Grant Program*, http://www.txdps.state.tx.us/dem/Mitigation/hmgp_fact_sheet.pdf.

acquired the properties. The City Council therefore expressly conditioned its purchases on all participating homeowners securing a release from HOA fees, in order to exempt the City from future financial obligations and to satisfy the program's clear title requirement.

Another problem soon arose. The Department of Homeland Security contacted the Texas Division of Emergency Management about allegations that Plaintiffs had used inflated estimates of their property values. The state agency forwarded notice of the inquiry to the City and directed it to "cease all activities concerning the purchase" of the properties. ROA 1111.

As a result of the delay caused by the fraud investigation, the City requested and received from the State an extension of the grant until August 31, 2011, and an extension of the deadline to close the sale of Plaintiffs' homes until August 1, 2011. Plaintiffs were notified of the new deadlines via email. On August 8, 2011, the City's attorney notified Plaintiffs' attorney that Plaintiffs had missed the deadline "to convey to the City fee simple title to their property." ROA 1095. Plaintiffs contend that the City acquired all eligible properties but theirs, although the parties agree that no other homes in the Sands of Kahala Beach subdivision were acquired.

Plaintiffs first filed two suits in state court seeking to compel the City to purchase their properties. After the dismissal of those cases, Plaintiffs decided to try federal court and brought this suit against the City of Galveston and a number of DPS officials. The district court dismissed all claims. In ruling on the DPS officials' motion to dismiss under Rule 12(b)(6), the court found that Plaintiffs lacked a constitutionally protected property interest in the HMGP funds because nothing in the Stafford Act statute or regulations "dictates that qualified property owners are entitled to participate in the program or limits the State's discretion in determining a property owner's qualifications for the program or reviewing those qualifications at any time in the process." *Bishop*

4

No. 14-20188

*v. City of Galveston*, 2013 WL 960531, at \*10 (S.D. Tex. Mar. 12, 2013).  With respect to the City's motion for summary judgment, the court determined that Plaintiffs' failure to show that they had obtained an HOA fee waiver defeated their claimed property interest in the funds.  *Bishop v. City of Galveston*, 1 F. Supp. 3d 623, 635–36 (S.D. Tex. 2014).  It also denied Plaintiffs' request for additional discovery, noting that Plaintiffs had been given more than ten months to pursue discovery and had "not offered any reasons or evidence of diligence in pursuing discovery nor of why they need more time and how that extension of discovery would probably create a genuine issue of fact."  *Id.* at 635.

In this appeal, Plaintiffs assert that Defendants deprived them of a property interest in the funds without due process by imposing an August 1 deadline for closing on the homes that was "arbitrary, self-imposed, and not otherwise a requirement of or related to the HMGP."  They further contend that the deadline was not communicated to them in advance of August 8 and that they provided the HOA fee waiver by August 5.

**II.**

We review *de novo* the district court's decisions granting the motion to dismiss and the motion for summary judgment.  *See Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 672 (5th Cir. 2013) (Rule 12(b)(6) dismissal); *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (summary judgment).  A district court's decision to grant summary judgment without allowing further discovery is reviewed for abuse of discretion.  *See Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009) ("The trial judge's decision to curtail discovery is granted great deference and, thus, is reviewed under an abuse of discretion standard.").

The initial inquiry in any due process case is whether the plaintiff can identify an interest in "life, liberty, or property" that the Constitution protects.

No. 14-20188

Plaintiffs initially identified the potential sources of a property interest in HMGP funds as the statute and regulations themselves as well as in combination with the policies and practices implementing them; and the sales contracts between Plaintiffs and the City. Plaintiffs later conceded that the statute and regulations did not alone create a property interest, but continued to assert that a property interest arose from the combination of the statute and regulations with the sales agreements and policies and practices.

The question whether the Stafford Act alone gives Plaintiffs a property interest in HMGP funds is easily resolved. Government benefit programs give rise to a property interest only when a claimant has an entitlement to the benefit. *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). There are two reasons why there is no such entitlement here. First, the HMGP funding in this case was not available to Galveston residents as an individual assistance program like the one at issue in *Ridgely*, 512 F.3d at 728–30. Instead, Texas received grants from FEMA and administered the program through its Division of Emergency Management, as authorized by the Stafford Act. *See* 42 U.S.C. § 5170c(c).[3] Second, putting aside that government entities rather than individuals are the direct recipients of HMGP grants, awarding a grant under the program is a discretionary decision. *See* 42 U.S.C. § 5170c (providing FEMA with the authority to provide hazard mitigation assistance and setting minimum standards, but only stating that the agency "may" do so). That means there is no entitlement to the funds. *See Ridgely*, 512 F.3d at 735 ("[A] benefit is not a protected entitlement if government officials may grant or deny

---

[3] *See also* Texas DPS, *Hazard Mitigation Grant Program*, http://www.txdps.state.tx.us/dem/Mitigation/hmgp_fact_sheet.pdf.

it in their discretion.") (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

Plaintiffs invoke language from *Ridgely*, which recognizes that even when the statute and regulations do not, standing alone, create a property interest, "[t]he possibility remains that plaintiffs can establish a property interest based on . . . policies and practices in implementing the statute and regulations." 512 F.3d at 735. The only such conduct Plaintiffs have identified relates to their contracts with the City for the purchase of their homes.

A property interest may arise from a contract. *See id.* at 735; *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (noting that a contract can be evidence of a claim of entitlement to a government benefit). At the outset, we note that it is unclear how the contracts could give rise to a claim against the DPS officials given that the State is not a party to the contracts and did not enter into any other agreements with Plaintiffs.[4] But because we find that the contract did not give Plaintiffs an unconditional interest in the HMGP funds even as to the City, we need not rely on that distinction.

The contracts with the City required each homeowner "to transfer marketable fee simple title to the property to the City and . . . to execute now and in the future, any and all documents required by the City and/or [Texas Division of Emergency Management] to complete this transaction." ROA 851. The City argues that Plaintiffs failed to meet the condition precedent for the purchase of the properties when they failed to provide HOA fee waivers by the August 1 deadline. As discussed above in the context of government benefits, the Due Process Clause is implicated only when the claimant has an entitlement to the property. A party to a contract has no entitlement to

---

[4] The State's approval of the City's participation in the program merely authorized the purchase of the properties.

performance by another party when that performance is dependent on fulfilling a condition precedent. *See Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) ("A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. . . . [I]f an express condition is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform." (internal quotation marks and citations omitted)); RESTATEMENT (SECOND) OF CONTRACTS § 225(1) ("Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused."); *cf. Cypress Forest Pub. Util. Dist. v. Kleinwood Mun. Util. Dist.*, 309 S.W.3d 667, 675–76 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that plaintiff did not have a vested property right in the annexation of property because the right was contingent on the "developers' discretion to execute and file the petition for annexation").

The district court found that Plaintiffs failed to comply with the condition of delivering clear title by August 1. Plaintiffs do not contend that they met the August 1 deadline, but argue that it was arbitrarily imposed and never communicated to them before the deadline had already passed. Undisputed record evidence refutes the latter contention. Plaintiffs' counsel requested information about the deadline on June 29, 2011. The City's counsel responded two days later with an attached letter from the City's consultant to the State, requesting that the State "extend the final date that the six remaining homeowners can close the sale of their properties until August 1, 2011" and that "the grant be extended until August 31, 2011, if possible, to allow for the City to complete the final settlements and demolitions and give the City enough time to properly close out the grant." ROA 1108–10. The requested extension was approved shortly thereafter.

Even if we were to set the deadline aside, we have no evidence that Plaintiffs ever provided the HOA fee waivers. Although Plaintiffs assert that they had met this condition by August 5, 2011, their counsel effectively conceded at oral argument that there is nothing in the record to substantiate this assertion. This, of course, is insufficient to defeat the City's motion for summary judgment, which requires an evidentiary showing, not just allegations in a complaint. *See Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984) ("[A] plaintiff cannot establish a genuine issue of material fact by resting on the mere allegations of its pleadings."). What is more, the City submitted an affidavit from Galveston's City Attorney stating that an HOA waiver was never provided. In light of this undisputed evidence that Plaintiffs never obtained the HOA waivers and thus could not deliver clear title as the contract required, the district court correctly granted summary judgment.

Nor did the district court err in denying additional discovery. Although Plaintiffs argued in the district court that discovery was not complete, they failed to file a motion for continuance under Rule 56(d) or otherwise specify what discovery was necessary to produce evidence on a material issue. The failure to file a Rule 56(d) motion for further discovery likely forfeits this issue. *See Ferrant v. Lowe's Home Ctrs., Inc.*, 494 F. App'x 458, 463 (5th Cir. 2012) (although plaintiff noted that discovery was incomplete, she "did not seek [relief under Rule 56(d), and therefore] she cannot argue that the district court erred in granting summary judgment without allowing for sufficient discovery"). But even if Plaintiffs had filed the proper motion, the district court had sound reasons for not delaying a ruling by allowing further discovery. The time provided for discovery was ample and the factual issue that was the basis for the summary judgment—Plaintiffs' failure to obtain HOA waivers—is one for which any helpful evidence should have been in Plaintiffs' possession. The district court therefore did not abuse its discretion in granting summary

No. 14-20188

judgment without allowing additional discovery. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (explaining that a litigant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts").

We therefore AFFIRM the district court's dismissal of Plaintiffs' claims.