Stephen ROSSI, Plaintiff,

v.

WEST HAVEN BOARD OF EDUCATION, George Palermo, and Ronald Stancil, Defendants.

No. 3:03CV1247 (MRK).

United States District Court, D. Connecticut.

March 7, 2005.

John R. Williams, New Haven, CT, for Plaintiff.

Richard J. Buturla, Warren L. Holcomb, Floyd Joseph Dugas, Berchem, Moses & Devlin, P.C., Milford, CT, for Defendants.

### MEMORANDUM OF DECISION

KRAVITZ, District Judge.

In this lawsuit, Plaintiff Stephen Rossi, formerly a student at West Haven High School, sues the West Haven Board of Education ("Board"), its Superintendent George Palermo, and Principal Ronald Stancil, for violating his right to equal protection under the Fourteenth Amendment as enforced through 42 U.S.C. § 1983. Pending before the Court is Defendants' Motion for Summary Judgment [**doc. # 17**] and Motion to Strike Affidavit of Stephen Rossi [**doc. # 27**]. For the reasons explained below, the Court GRANTS summary judgment in favor of Defendants and DENIES as MOOT their motion to strike.

### I.

The following facts are undisputed unless otherwise noted.[1] On April 9, 2001,

---

1. These facts are drawn from the following pleadings and exhibits attached thereto: Defendants' Memorandum of Law in Support of Summary Judgment [doc. # 18] ("Defs.'

Mr. Rossi, was arrested and charged with ten counts of illegal sale of controlled substances in violation of Conn. Gen.Stat. § 21a–279b, ten counts of illegal possession of controlled substances in violation of Conn. Gen.Stat. § 21a–279c and five counts of larceny in violation of Conn. Gen. Stat. § 53a–125b. Defs.' 56(a)(1) Stmt., at ¶ 6; Pl.'s 56(a)(1) Stmt., at ¶ 6. As a result of these charges, on or about April 16, 2001, Mr. Rossi was suspended from school for ten days, and the Board initiated expulsion proceedings against him. Defs.' 56(a)(1) Stmt., at ¶ 7; Pl.'s 56(a)(1) Stmt., at ¶ 7. Expulsion proceedings are required by statute when a student is found to have distributed controlled substances. *See* Conn. Gen.Stat. § 10–233d.

The Board has delegated expulsion decisions to an impartial hearing officer. In this case, attorney Daniel P. Murphy was designated as the impartial hearing officer, in place of attorney Peggy McLoush Pschirrer, who normally hears such matters but was unable to hear Mr. Rossi's case. Defs.' 56(a)(1) Stmt., at ¶ 12; Pl.'s 56(a)(1) Stmt., at ¶ 12. On March 26, 2002, following two days of evidentiary hearings, Mr. Murphy issued a written Final Decision in Mr. Rossi's case. Defs.' 56(a)(1) Stmt., at ¶ 13; Pl.'s 56(a)(1) Stmt., at ¶ 13. Mr. Murphy found that between June 2000 and August 2000 while working at Silver's Drug Store in West Haven, Mr. Rossi stole various controlled substances, including Alprazolam (commonly known as Xanex), Vicoden and Valium, with the purpose of selling or otherwise distributing these drugs to other students. Defs.' 56(a)(1)

Stmt., at ¶ 14; Pl.'s 56(a)(1) Stmt., at ¶ 14. Mr. Murphy also found that between June 2000 and the Fall of 2000, Mr. Rossi did in fact distribute over 1000 Xanex pills to students at West Haven High School and Notre Dame High School, both on and off campus. Defs.' 56(a)(1) Stmt., at ¶ 14; Pl.'s 56(a)(1) Stmt., at ¶ 14. This conduct, Mr. Murphy determined, violated the Board's drug policies. Defs.' 56(a)(1) Stmt., at ¶ 15; Pl.'s 56(a)(1) Stmt., at ¶ 15.

Based upon his findings, Mr. Murphy expelled Mr. Rossi for a period of 180 days, the equivalent of one full school year, commencing on March 18, 2002. In fact, however, Mr. Ross served only about one-half of his expulsion before he graduated from high school. Defs.' 56(a)(1) Stmt., at ¶ 15; Pl.'s 56(a)(1) Stmt., at ¶ 15. Mr. Rossi applied for early readmission to school so that he could attend graduation, but Mr. Palermo denied his request. Defs.' 56(a)(1) Stmt., at ¶ 17–18; Pl.'s 56(a)(1) Stmt., at ¶ 17–18. Shortly before he was arrested, Mr. Rossi's father met with Mr. Stancil to discuss a number of grades that his son believed were incorrect. Based on Mr. Rossi's representations as relayed through his father, Mr. Stancil indicated that Mr. Rossi would be eligible for membership in National Honor Society. Defs.' 56(a)(1) Stmt., at ¶ 34; Pl.'s 56(a)(1) Stmt., at ¶ 34. However, after contacting the teachers whose grades were questioned by Mr. Rossi, Mr. Stancil corrected a few of the grades, but ultimately concluded that Mr. Rossi's grade point average fell short of the membership requirements. Defs.' 56(a)(1) Stmt., at

Mem. in Supp. of Summ. J."); Defendants' Local Rule 56(a)(1) Statement [doc. # 19] ("Defs.' 56(a)(1) Stmt."); Plaintiff's Brief in Opposition to Motion for Summary Judgment [doc. # 22] ("Pl.'s Br. in Opp'n to Mot. for Summ. J."); Plaintiff's Local Rule 56(a)(2) Statement [doc. # 23] ("Pl.'s 56(a)(2) Stmt."); Defs.' Reply Memorandum of Law in Support

of Summary Judgment [doc. # 26] ("Defs.' Reply"); Defendants' Memorandum in Support of Motion to Strike Affidavit of Stephen Rossi [doc. # 27] ("Defs.' Mem. in Supp. of Mot. to Strike"); and Plaintiff's Brief in Opposition to Motion to Strike Portions of Plaintiff's Affidavit [doc. # 28] ("Pl.'s Br. in Opp'n to Mot. to Strike").

¶ 35; Pl.'s 56(a)(1) Stmt., at ¶ 35. This lawsuit followed.

## II.

This Court has had several recent occasions to describe at length the standard for granting summary judgment. *See, e.g., Merry Charters, LLC v. Town of Stonington,* 342 F.Supp.2d 69, 73 (D.Conn.2004); *Lynch v. McNamara,* 342 F.Supp.2d 59, 64 –65 (D.Conn.2004); *Brown v. Regional School Dist. 13,* 328 F.Supp.2d 289, 292 (D.Conn.2004). There is, therefore, no need to repeat, yet again, what is already set forth in those decisions. Suffice it to say that in assessing the motion for summary judgment in this case, the Court has applied the standards described at greater length in those decisions.

## III.

 Mr. Rossi's sole claim in this case is based on the punishment he received as a result of his arrest in April 2001, which he asserts was more severe than that which other, similarly situated students received from Defendants. In particular, Mr. Rossi alleges that Defendants violated his equal protection rights under the so-called "class of one" theory as articulated in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).[2] Both in their pleadings and at oral argument, the parties agreed that the material facts in this case are undisputed and that the only remaining question is whether the facts alleged are sufficient to allow a jury to find for Mr. Rossi on his *Olech* claim. In this Circuit, "[t]o prevail under *Olech,* ... [a] plaintiff[ ] need[s] to allege that [he was] 'intentionally treated differently from others similarly situated and that there [wa]s no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis,* 294 F.3d 355, 364 (2d Cir.2002) (citing *Olech,* 528 U.S. at 564, 120 S.Ct. 1073). As discussed below, the Court concludes that Mr. Rossi's claim fails as a matter of law because on the basis of the undisputed facts, no reasonable jury could find that there was a lack of rational basis for the difference in the treatment he received. *See id.*

### A.

 Although Mr. Rossi's claim ultimately fails the "rational basis" prong of the *Olech* inquiry, it bears mentioning that his "evidence" of similarly situated students is also problematic. As the parties

---

**2.** Mr. Rossi's counsel clarified at argument that the allegations in the Complaint regarding the National Honor Society and Mr. Rossi's grades do not form the basis for a separate legal claim against Defendants but instead are asserted to show Defendants' bad faith. The Second Circuit has declined to decide whether a showing of malice or bad faith is necessary to state a valid "class of one" equal protection claim. *See, e.g., Giordano v. New York,* 274 F.3d 740, 751 (2d Cir.2001); *Harlen Assocs. v. Village of Mineola,* 273 F.3d 494, 500 (2d Cir.2001). Therefore, the Court need not address whether Mr. Rossi's allegations regarding Mr. Stancil and Mr. Palermo evidence Defendants' bad faith. The Court notes, however, that if a showing of bad faith were required, Mr. Rossi could not demonstrate bad faith on the Board's part. This is because the decision maker in his case, Mr. Murphy, was not the Board's regular hearing officer, and Mr. Rossi has not alleged that Mr. Murphy knew about, much less was involved with, punishments that other students received. Furthermore, it is undisputed that in the case of two of Mr. Rossi's alleged comparators, D.S. and S.W., the Board itself sought a full 180–day expulsion, but the hearing officer, Ms. Pschirrer, reduced the expulsion period. *See* Defs.' 56(a)(1) Stmt. at ¶ 23–31; Pl.'s 56(a)(2) Stmt. at ¶ 23–31. Therefore, a reasonable jury could not conclude that the Board itself intentionally treated Mr. Rossi differently from other students on the basis of bad-faith or personal animus.

agree, the other individuals against whom an *Olech* plaintiff wishes to compare himself must be "similarly situated in all material respects." *Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir.1997) (cited in *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000)). In order to satisfy this standard, "a plaintiff must show that [his comparators] were subject to the same [ ] evaluation and discipline standards" and that these comparators "who went undisciplined engaged in comparable conduct." *Graham*, 230 F.3d at 40. "As a general rule, whether [persons] are similarly situated is a factual issue that should be submitted to the jury . . . . This rule however is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonably jury could find the similarly situated prong met." *Harlen Assocs.*, 273 F.3d at 499 n. 2. *See, e.g., Cruz v. Coach Stores*, 202 F.3d 560, 568 (2d Cir.2000) (the fact that alleged comparators conduct was verbal while plaintiff's was physical was "fatal to [plaintiffs'] discriminatory enforcement claim").

In his opposition to the motion for summary judgment, Mr. Rossi has identified a long list students whom he claims are similarly situated but received less severe punishments than he did. *See* Pl.'s 56(a)(2) Stmt., at 6–12. During his deposition, Mr. Rossi mentioned only six students who were similarly situated to him. *See* Rossi Dep., attached to Defs.' Mem. in Supp. Summ. J., at 5, 29. Yet, in an affidavit submitted along with his opposition brief, Mr. Rossi revised his answer, now identifying thirty-five "similarly situated" students, only five of whom were originally identified in his deposition. *See* Rossi Aff., Ex. 1 to Pl.'s 56(a)(2) Stmt., at 3–8.

Defendants argue that the Court should disregard the allegations in Mr. Rossi's affidavit because they lack a proper foundation and are not admissible to defeat summary judgment. The Court agrees with Defendants. An affidavit submitted in support of summary judgment must comply with the requirements of Rule 56(e) of the *Federal Rules of Civil Procedure*, which states that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). *See also Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir.2004) (same).

According to his affidavit, Mr. Rossi "ascertained" information about the thirty-five students he identified in his opposition affidavit from his "research" of public records and from his "personal knowledge." Rossi Aff., Ex. 1 to Pl.'s 56(a)(2) Stmt., at ¶ 3. However, Mr. Rossi neglects to describe in even the most general terms which public records he used in his research. Nor does he specify which facts came from records and which are based on his "personal knowledge." At oral argument, the Court gave Mr. Rossi's attorney an opportunity to fill in these blanks, but his attorney could not do so. Without this information, however, the Court cannot begin to determine whether the information in Mr. Rossi's affidavit would be admissible at trial and whether Mr. Rossi would be competent to testify about it. For all the Court knows from Mr. Rossi's affidavit, the information contained in it is based upon rank speculation and fourth-hand hearsay. While Mr. Rossi's counsel contended at oral argument that in opposing summary judgment, Mr. Rossi had no burden to show that the information contained in his affidavit would be admissible at trial, Mr. Rossi's counsel is plainly wrong. *See Patterson*, 375 F.3d at 219 ("Rule 56(e)'s requirement . . . means that an affidavit's hearsay assertion that would not be admis-

sible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999) (holding that hearsay statement "did not constitute competent evidence" and thus could not be considered in opposition to motion for summary judgment). *See also Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir.1997) (bald assertions not based on personal knowledge were properly ignored by district court in granting summary judgment). Accordingly, the Court finds that Mr. Rossi's affidavit lacks sufficient foundation to permit its use to defeat a properly supported motion for summary judgment.

More important, even if the Court considered Mr. Rossi's affidavit,[3] there are at least three crucial differences between Mr. Rossi and the other students he identifies that precludes them from being considered "similarly situated." First, the Court is not convinced that Mr. Rossi should properly be compared to students whose conduct did not involve drugs. *See Russo v. City of Hartford*, 341 F.Supp.2d 85, 116–17 (D.Conn.2004) (plaintiff's claim that he was similarly situated to "a litany of individuals ... who he alleges have somehow or another misbehaved" failed because "not one [of the other cases] involved the suspected illegal use of drugs"). Indeed, it is telling that in the Complaint, Mr. Rossi referred only to other "serious drug and drug-related offenses." *See* Compl. [doc. # 1], at ¶ 12. Yet, now Mr. Rossi argues that limiting any comparison solely to student drug offenders is unduly restrictive, noting that the Second Circuit does not require comparators to be "identical" to the plain-

tiff, and that instead conduct of "comparable seriousness" will suffice. *Graham*, 230 F.3d at 40.

The Court agrees with Mr. Rossi's statement of the Second Circuit's standard. However, that court has also stated that "the standard for comparing conduct requires a *reasonably close resemblance of the facts and circumstances* of plaintiff's and comparator's cases." *Id.* at 40 (emphasis added). *See, e.g., Cruz*, 202 F.3d at 568 (distinguishing between verbal and physical conduct). In the Court's view, applying this standard to Mr. Rossi's claims in this case would result in limiting his comparators to those who engaged in drug-related offenses.

Second, as Mr. Rossi acknowledges in his opposition brief, an important criterion for any comparators in this case is that the students' conduct be of a kind that would subject them to expulsion. *See* Pl.'s Br. in Opp'n to Mot. for Summ. J. at 12. Mr. Rossi asserts that each of the thirty-five students he identifies in his affidavit engaged in conduct for which the Board expels students and that they are, therefore, appropriate comparators. *Id.* But Mr. Rossi's argument misses the mark because it neglects to account for the statutory restrictions placed on the Board's authority to expel students. In general, the Board can expel students only for conduct that occurs on school grounds. *See* Conn. Gen.Stat. § 10–233d(a)(1). Section 10–233d(a)(1) "authorizes school boards to expel students from school for conduct that occurs off school grounds" only if such conduct is "seriously disruptive of the educational process." *Packer v. Bd. of Educ.*

---

3. Mr. Rossi appears to have intended to replace the allegations in his deposition regarding similarly situated comparators entirely with his affidavit, as his Local Rule 56(a)(2) Statement and opposition brief both cite exclusively to his affidavit. *See* Pl.'s 56(a)(2)

Stmt. at 6–12; Pl.'s Br. in Opp'n to Mot. for Summ. J. at 12. Therefore, to the extent that Mr. Rossi's affidavit conflicts with or omits allegations made in his deposition, the Court will rely on Mr. Rossi's affidavit.

*of Thomaston,* 246 Conn. 89, 104–05, 717 A.2d 117 (1998).

Only six of the thirty-five students listed in Mr. Rossi's affidavit are alleged to have engaged in misconduct on school grounds. *See* Rossi Aff., Ex. 1 to Pl.'s 56(a)(2) Stmt., at 2–8; Defs.' 56(a)(1) Stmt., at ¶ 21–23, 29–31. With respect to the remaining students, Mr. Rossi has not alleged sufficient facts to allow a fact-finder to infer that the students' conduct was seriously disruptive of the educational process, within the meaning of Connecticut law. Therefore, a jury could not find on the basis of this record, that the majority of the students Mr. Rossi has identified were "subject to the same ... discipline standards" as he was, as required by Second Circuit precedent. *Graham,* 230 F.3d at 40.

For the same reason, the Court finds it virtually, if not completely, fatal to Mr. Rossi's claim that of the thirty-five students he has identified, he is the only one subject to the mandatory expulsion requirements of Connecticut law. Section 10–233d(2) of the Connecticut General Statutes provides as follows:

> expulsion proceedings ... shall be required ... whenever there is reason to believe that any pupil ... (c) on or off school grounds, offered for sale or distribution a controlled substance ... whose manufacture, distribution, sale, prescription, dispensing, transporting, or possessing with intent to sell, dispense, offering or administering, is subject to criminal penalties.

Conn. Gen.Stat. 10–233d(2). The section goes on to require that "such a pupil shall be expelled for one year" with the possibility that "the board of education or the hearing board may modify the period of expulsion for a pupil on a case by case basis." *Id.*

Because of his conduct in selling large quantities of controlled substances on school grounds, Mr. Rossi was subject to the mandatory statutory expulsion of 180 days, subject to modification on a case-by-case basis. No one else on Mr. Rossi's list engaged in conduct that would have subjected them to this mandatory, statutory 180–day expulsion, only further reinforcing the conclusion that none of the students to whom Mr. Rossi would compare himself were, in fact, "similarly situated" to him. For, in the words of the Second Circuit, they did not engage in "comparable conduct" and were not subject to "the same disciplinary standards." *Graham,* 230 F.3d at 39–40.

### B.

As a consequence, it is doubtful that Mr. Rossi has carried his initial burden of creating a triable issue on the similarly situated prong of *Olech.* However, even assuming that he had done so, the Court is convinced that his claim founders on the second prong of *Olech.* For it is without question that there was a "rational basis" for the Board's decision to expel Mr. Rossi for 180 days.

A decision "can be considered irrational" only when the decision-maker "acts with no legitimate reason for its decision." *Harlen,* 273 F.3d at 500 (quotation marks and citation omitted). Thus, the Court's inquiry on the second-prong of an *Olech* claim is a very narrow one. "*Olech* does not empower federal courts to review government actions for correctness." *Bizzarro v. Miranda,* 394 F.3d 82, 89–90 (2d Cir.2005). Rather, the *Olech* inquiry "focuses on whether the official's conduct was rationally related to the accomplishment of the work of [the] agency." *Id.* In sum, the rational basis standard is not a difficult one to meet; decisions that are imprudent, ill-advised, or even incorrect may still be rational. *See, e.g., African Trade,* 294 F.3d at 364 (finding that defendant's deci-

sion not to consider plaintiffs for certain positions, even if premised only on the fact that plaintiffs spoke out publicly about defendant's official conduct, would not be irrational).

Mr. Rossi does not allege any facts that would suggest, let alone show, that Defendants acted without "legitimate reason" when they expelled him for 180 days, as required by Conn. Gen.Stat. § 10–233d(2), or that Defendants' decision to expel a student who had distributed large quantities of illegal drugs to students on school grounds had no rational relationship to Defendants' education mission. Apparently, Mr. Rossi would like the jury to infer irrationality from the mere existence of other students who were not expelled for 180 days but who, according to Mr. Rossi, allegedly engaged in what he believes is comparable conduct.

However, even if such students exist—and that has not been shown on this record—Mr. Rossi cannot use the first prong of the *Olech* inquiry to satisfy the second prong. As the Second Circuit noted in *Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir.1995) "evidence suggesting that [plaintiff] was treated differently from others does not, in itself, show" discrimination on the basis of impermissible considerations. *Id.* at 684; *see A.B.C. Home Furnishings, Inc. v. Town of E. Hampton*, 964 F.Supp. 697, 702 (E.D.N.Y.1997) ("Recent Second Circuit decisions have been careful to apply each prong of the [selective treatment] test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim."). To rule otherwise would be an invitation to re-try every school disciplinary decision before a jury, a result that is clearly contrary to the law and to the express statements of the Supreme Court. Indeed, the Supreme Court has explicitly warned that "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Heeding this warning, this Court will "refrain from second-guessing the disciplinary decisions made by school administrators." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

In any event, a careful look at the undisputed facts in case reveals that the Board's decision to expel Mr. Rossi cannot possibly be labeled irrational or arbitrary. There is no dispute that Defendants have "a legitimate interest in providing a safe environment for students and staff." *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1201 (10th Cir.2003); *see also Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361, 376 (6th Cir. 1998) ("the school district has a legitimate and strong interest in safeguarding the health and welfare of its students"). The parties agree that Mr. Rossi's closest expellable comparator was D.S., who was found in possession of 13 Xanax pills on school grounds. D.S. was expelled for 123 days, 57 days less than Mr. Rossi. But, in fact, D.S. actually served a longer period of expulsion, since Mr. Rossi graduated approximately 90 days after his expulsion began, while D.S. (who was a junior when expelled) served his entire expulsion of 123 days. *See* Defs.' 56(a)(1) Stmt., at ¶ 31–32. Unlike Mr. Rossi, D.S. was not found to have *distributed* any drugs to other students; rather, he was found only to have been in *possession* of them. Defs.' 56(a)(1) Stmt., at ¶ 20; Pl.'s 56(a)(2) Stmt., at ¶ 20. On these facts, no jury could reasonably conclude that it was irrational for the Board to expel Mr. Rossi (who was found to have distributed 1000 stolen pills to students on school grounds) for 180 days, as required by Connecticut statute, and to expel D.S. (who was found merely to have

been in possession of 13 pills) for 123 days. In fact, in a case with strikingly similar facts, a court granted summary judgment on a plaintiff's *Olech* claim in favor of the school administrators noting that, "just as our criminal laws distinguish between those who distribute narcotics and those who merely possess them, [Defendants were] entitled to distinguish [the plaintiff's] conduct from that of other students." *Wagner–Garay v. Fort Wayne Comm. Schs.*, 255 F.Supp.2d 915, 929 (N.D.Ind. 2003). Thus, it was not irrational as a matter of law for the Board to distinguish in the severity of its punishment between a student who distributed large quantities illegal drugs on school grounds and one who merely possessed a small quantity of them.[4]

Many of the other students who engaged in conduct that was subject to expulsion and to whom Mr. Rossi compares himself were, according to Mr. Rossi's affidavit, disciplined for infractions such as leaving school without permission, fighting or committing a sexual act on school grounds. *See* Rossi Aff., Ex. 1 to Pl.'s 56(a)(2) Stmt., at 3, 8. Needless to say, there are countless "rational" and "legitimate" reasons for treating these students differently from Mr. Rossi. To just name one, as discussed above, none of the other students was subject to the mandatory 180–day expulsion of Conn. Gen.Stat. § 10–233. Given the nature, severity and circumstances of Mr. Rossi's misconduct on school grounds, no reasonable jury could conclude that it was irrational for the Board to have treated Mr. Rossi more harshly than the other students.

4. Another student, S.W., was found in possession of a mirror containing cocaine residue. However, there was no evidence that she had used or distributed cocaine. S.W. was expelled for the remainder of the school year, approximately 20 days. Defs.' 56(a)(1) Stmt.,

## IV.

In conclusion, the Court GRANTS Defendants' Motion for Summary Judgment [**doc. # 17**] on Mr. Rossi's *Olech* "class of one" equal protection claim. As a result of this ruling, the Court DENIES AS MOOT Defendants' Motion to Strike the Affidavit of Stephen Rossi [**doc. # 27**]. **The Clerk is directed to close the file.**

IT IS SO ORDERED.

at ¶ 22–25; Pl.'s 56(a)(2) Stmt., at ¶ 22–25. As with D.S., given the facts, no rational jury could properly conclude that the difference in treatment between S.W. and Mr. Rossi was irrational.