# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10880

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2015

Lyle W. Cayce
Clerk

DA VINCI INVESTMENT, LIMITED PARTNERSHIP,

　　　　Plaintiff - Appellee

v.

CHARLIE PARKER; KATHRYN WILEMON; SHERI CAPEHART; JIMMY BENNETT; MICHAEL GLASPIE,

　　　　Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CV-971

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

　　　Plaintiff Da Vinci Investment Limited Partnership sued the City of Arlington, Texas, and five city council members in their official and individual capacities. Da Vinci claimed violations of its substantive due process and equal protection rights under 42 U.S.C. § 1983, and also claimed that an unlawful taking occurred under the Texas Constitution. The individual council

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10880

members filed a motion for judgment on the pleadings on the Section 1983 individual capacity claims on the basis of absolute and qualified immunity. The district court denied the motion. This interlocutory appeal followed. We AFFIRM in part and REVERSE in part.

FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a proposed development plan to build a car wash in Arlington, Texas. In 1991, Da Vinci purchased approximately 12 acres of undeveloped land in Arlington and obtained a zoning change on the property to "planned development" ("PD"). PD zoning provides that property can only be developed in accordance with an approved development plan. Over several years, Da Vinci developed and sold portions of the land. The land at issue in this appeal is Da Vinci's sole remaining tract (the "Lot"). In 2012, Da Vinci contracted with a third party who would purchase the Lot; the purchase was conditioned upon approval by the City of a development plan to build a car wash. Pursuant to the PD zoning, a car wash was a permitted use on the Lot.

In February 2013, the City conducted a review and found that the proposed development plan for a car wash was unlikely to have a negative effect on the location and was consistent with the surrounding uses. In March, Da Vinci and the purchaser submitted a formal development plan application for the Lot. That same month, a City staff report found that the plan complied with the minimum commercial design standards and would have no impact on traffic.

There was significant opposition to the development plan from real estate developer Jim Poynter and two former city officials. These individuals sent emails to the council members stating their objections and sometimes attaching letters of opposition from community members. Council member Parker answered one such email from Poynter: "Thanks Jim more wood for

No. 14-10880

the fire and it is much appreciated." Another email from Parker to Poynter stated: "I think that you have this thing knocked. I know that I can get [council member] Sheri[] [Capehart's] vote against also."

In May, after a public hearing, the planning and zoning commission recommended against approving the development plan because the plan did not mitigate compatibility problems and enhance the neighborhood areas. Da Vinci appealed the commission's decision to the city council; the council agreed to hear the appeal. The next day, Poynter sent an email to council member Bennett inquiring about the decision to approve the appeal. Bennett responded: "I voted in favor because I have a personal policy to hear almost all [o]f these types [o]f requests. That being said, I cannot imagine a scenario where the case would ever get my support. Thanks for all you do Jim."

In August, the city council conducted a public hearing to consider the development plan. The hearing consisted of, among other things, a presentation by Da Vinci and opinions of citizens who spoke both for and against the plan. At the conclusion of the hearing, the council voted to deny the development plan application by a vote of 5-4. The denial was made without discussion. The contract of sale between Da Vinci and the purchaser was thereafter terminated.

In November 2013, Da Vinci filed suit against the City and the council members in state court. The case was removed to the United States District Court for the Northern District of Texas. The council members filed a motion for judgment on the pleadings and a motion for summary judgment.[1] In the motions, the council members argued they were entitled to absolute or at least qualified immunity. The district court denied the motion for judgment on the

---

[1] The pleadings before the district court were Da Vinci's complaint and a Federal Rule of Civil Procedure 7(a) reply to the council members' answer. No dispositive motions were filed by the City or the council members in their official capacities.

No. 14-10880

pleadings and did not consider the motion for summary judgment.  The district court then issued a pretrial scheduling order directing the parties to conduct limited discovery related to the immunity defenses.  The council members filed a timely appeal of the district court's denial of absolute and qualified immunity and the discovery order.

## DISCUSSION

Orders rejecting absolute and qualified immunity defenses are immediately appealable.  *Will v. Hallock*, 546 U.S. 345, 350 (2006).  A district court's refusal to dismiss claims on the basis of absolute or qualified immunity is reviewed de novo.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standards as a Rule 12(b)(6) motion to dismiss.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When asserting an immunity defense, "[i]t is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000).  "Once the movant *asserts* this affirmative defense, the burden *shifts* to the plaintiff to rebut it." *Id.* at 633-34 (citation, quotation marks, and alteration omitted).

### I.     Absolute Immunity

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). To determine whether a particular activity is legislative, we use two tests:

The first test focuses on the nature of the facts used to reach the

4

given decision. If the underlying facts on which the decision is based are legislative facts, such as generalizations concerning a policy or state of affairs, then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the particularity of the impact of the state action.  If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Hughes v. Tarrant Cnty.*, 948 F.2d 918, 921 (5th Cir. 1991) (quotation marks omitted).

The district court held that Da Vinci had "pleaded sufficient facts to overcome Individual Defendants' absolute immunity defense."  The court relied on the fact that the denial of the development plan "affected a specific individual and a specific situation" and "was not a general and prospective action that affected the entire community or a prospective amendment of a larger general plan that merely related to Plaintiff's property."

The council members argue that they are entitled to absolute immunity because the denial of the development plan application was a legislative activity.  They contend that the "process for obtaining approval of [Da Vinci's] development plan application was a zoning event under the City's code provisions" and zoning is a legislative activity.[2]  Da Vinci contends that this is not a zoning case because "it does not involve a change to the zoning classification for Da Vinci's property."  It argues that the council members fail to distinguish between the ordinance processes for rezoning into a new PD district and plan approval for property in an existing PD zone.  The denial of its development plan, Da Vinci argues, only involved the second step and was

---

[2] All ordinances referenced in this opinion are those that were in effect at the time of the events in question.

therefore not a zoning decision.

In one precedent, a developer submitted a plan to build apartments. *Bryan v. City of Madison*, 213 F.3d 267, 269 (5th Cir. 2000). The plan was approved, but the developer failed to apply for a permit within the deadline established by the city ordinances. *Id.* at 270. As a result, he was forced to resubmit the plan for approval. *Id.* His site plan was again approved, but the mayor vetoed it. *Id.* Bryan submitted another plan, which the board approved, and the mayor vetoed. *Id.* at 271. This pattern repeated itself until Bryan eventually lost his opportunity to purchase the land. *Id.* Bryan sued the mayor, among others, under Section 1983 alleging violation of his Fifth and Fourteenth Amendment rights. *Id.* at 272. The district court concluded the mayor was entitled to absolute immunity. *Id.*

On appeal, we reversed. *Id.* Applying the tests used in *Hughes*, we determined that the mayor's vetoes were not legislative actions:

> In each instance, the mayor was vetoing a determination that Bryan's plan satisfied city zoning ordinances or building requirements. Such a determination does not involve the determination of a policy. Rather than constituting a prospective rule, an overall plan, or general policy, this determination entered the realm of enforcement with respect to approval of a specified proposed plan. Finally, under the two . . . tests, the determination was based on specific, particular facts and affected Bryan's development alone.

*Id.* at 273 (internal quotation marks omitted). We also noted that, under our precedent, zoning is a legislative activity because it "is general and prospective" and "directly affects the entire community." *Id.* We determined that "[i]n the present case, however, general rules are being applied to one specific piece of property" and therefore the activity was administrative rather than legislative. *Id.* at 273-74.

Da Vinci's development plan was "based on specific, particular facts and affected [Da Vinci's] development alone." *See id.* at 273. The denial of the plan

did not "involve the determination of a policy," but, instead, applied "general rules . . . to one specific piece of property." *See id.* at 273-74 (citation and quotation marks omitted). We conclude that the council members' denial of Da Vinci's development plan was not a legislative decision. There is no absolute immunity for the council members' actions.

The council members argue that regardless of any similarity to the actions in *Bryan*, the present case involves zoning and *Bryan* did not. The City's ordinances can be read to label the development plan review process as zoning, but we are not controlled by the labels a city chooses. The land was zoned PD twenty-two years prior to the development plan application. The decision being contested now involved "specific, particular facts," which affected "[one] development alone," and was in "the realm of enforcement with respect to approval of a specific proposed plan." *See id.* at 273 (quotation marks omitted). A city cannot categorize all its decisions as "zoning" in order to grant its legislators blanket immunity.

Da Vinci pleaded sufficient facts to overcome the council members' claim to absolute immunity.

## II. *Absolute Quasi-Judicial Immunity*

The district court held that "[p]laintiff's allegations show that Individual Defendants'[] actions were not essentially judicial in nature and [they] were not performing functions essentially similar to those of judges when they voted to deny Plaintiff's development plan and, therefore, Individual Defendants are not entitled to quasi-judicial immunity." In doing so, it considered the factors enumerated in *Butz v. Economou*, 438 U.S. 478, 512 (1978).

Absolute quasi-judicial immunity protects officials that "perform *functions* comparable to those of judges and prosecutors." *Beck,* 204 F.3d at 634 (citing *Butz,* 438 U.S. at 512-13). Under this "functional approach," we

look "at the nature of the function performed, not the identity or title of the actor who performed it." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)).  The Supreme Court has

> identified a nonexhaustive list of factors to determine whether [nonjudicial actors] perform[] "quasi-judicial" functions, and thus are entitled to absolute immunity:  (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal.

*Id.* (citing *Butz*, 438 U.S. at 511-13).  "No one factor is controlling."  *Id.*

Da Vinci argues that the district court properly denied the council members' claim for absolute quasi-judicial immunity because "[i]n judicial proceedings, judges do not solicit opposition to, and evidence against, a party in the proceeding, as happened here."  As to the *Butz* factors, Da Vinci argues that there was "absolutely no insulation of the development plan process from political influence."  That influence was evidenced by the communications between the council members and members of the community.  Further, there was evidence that the council members did not consider precedent to be of importance, as they ignored the fact that the council had approved a similar development plan for a car wash.  Da Vinci also contends the process was not adversarial because, though parties for and against the plan were provided an opportunity to address the city council, nobody testified under oath and, with one exception, there was no cross-examination.

The council members did not analyze the *Butz* factors in their initial brief.  They acknowledge the factors in their reply brief but state they "are not absolute."  Instead, the council members contend that Texas law controls the question whether the council members were acting in a quasi-judicial capacity.  They argue that under Texas law, a city's consideration of whether a

subdivision plat complies with ordinances is a quasi-judicial matter. Thus, the denial of a development plan application is also quasi-judicial.

We disagree. The council members cite no binding or persuasive authority indicating that we should abandon our past consistent reliance on *Butz* and instead examine state law on quasi-judicial immunity.[3] Under *Butz*, Da Vinci has pleaded sufficient facts to overcome the council members' entitlement to absolute quasi-judicial immunity. First, because private communications occurred between city council members and citizens, the evidence-gathering and decision-making process was not judicial in nature. *See Beck,* 204 F.3d at 634. Second, several of the *Butz* factors weigh in Da Vinci's favor. As to the second factor, there is no indication that the significant safeguards that exist in judicial proceedings applied to the council meeting. The record reflects that opponents and supporters of the development registered to make presentations to the council, but that is not the equivalent of a judicial proceeding. No one has identified a provision in the City's ordinances that gives procedural rights such as a right to counsel or to cross-examine witnesses to those seeking approval of a project. Regarding the third factor, it is evident from the facts of this case that council members are subject to political pressures. On the fourth factor, Da Vinci's allegation that the city council previously approved a similar development plan supports the conclusion that precedent is not a controlling factor. As to the fifth factor, there were no allegations that, at the hearing, anyone was put under oath or that witnesses were called. We have held that a proceeding was adversarial where the "hearings were conducted by a presiding officer who administered oaths to witnesses and made evidentiary rulings." *Id.* at 636. There certainly were

---

[3] For support of their contention that Texas law controls, the council members cite to cases from the Third Circuit and the District of Colorado.

advocates and opponents here, but they were not presenting sworn and competing testimony from which a fact-finder was required, at least technically, to make an objective decision.

The district court properly denied the council members' motion for judgment on the pleadings on the ground of absolute quasi-judicial immunity.

## III.    *Qualified Immunity*

The council members argue that qualified immunity protects them from liability against Da Vinci's claims of a violation of substantive due process and of equal protection.  "[A] plaintiff seeking to defeat qualified immunity must show:  '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

## A.    *Substantive Due Process Claim*

The district court held that Da Vinci sufficiently pleaded a substantive due process violation.  The court determined that Da Vinci asserted a valid property interest in having the development plan approved.  Further, the complaint supported the conclusion that the council members violated clearly established law by arbitrarily denying Da Vinci's property rights.

"To prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies."  *Simi Inv. Co., v. Harris Cnty.,* 236 F.3d 240, 249-50 (5th Cir. 2000). "To have a property interest in a benefit," a plaintiff must "have a legitimate claim of entitlement to it"; relevant entitlements are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such

No. 14-10880

as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation and quotation marks omitted). If the benefit may be granted or denied at the discretion of government officials, it is not an entitlement. *Id.* Courts look for "'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ridgely v. FEMA,* 512 F.3d 727, 735-36 (5th Cir. 2008) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

The substantive due process right Da Vinci claims it was denied is the right to use its land "in a lawful manner for a lawful purpose." That is too broad a definition to be useful for our substantive due process analysis.[4] Da Vinci must show an entitlement under state or local law to approval of its development plan. In *Ridgely*, we held there was no property right in continued rent assistance because the pertinent statutes and regulations contained no mandatory language entitling the plaintiffs to the benefit. *Id.* at 736. Instead, the statutes provided that "FEMA *may* provide continued housing assistance." *Id.* (citation and quotation marks omitted). We held that "[b]ecause no 'specific directives' limit FEMA's discretion by compelling it to provide assistance upon a showing of eligibility, these provisions do not give rise to a property interest." *Id.*

Here, if, under the ordinances, city council members could "grant or deny [a development plan application] in their discretion," there was no entitlement

---

[4] Da Vinci argues that its property rights do not need to arise from a particular statute or ordinance. Instead, it argues that its property right arises generally from Texas law, citing a decision of this court in which we stated that "Texas law recognizes that the right of the owner of a property interest to use his property for a lawful purpose" is a "property right" for due process purposes. *Shelton v. City of Coll. Station*, 754 F.2d 1251, 1256-57 (5th Cir. 1985). After *Shelton* was reheard en banc, though, the full court effectively withdrew that definition of a protected property right for due process purposes. We ruled on other grounds, and said "we do not today undertake the task of defining the property right in question or deciding the related question of whether the state has deprived [the plaintiffs] of any property." *Shelton v. City of Coll. Station,* 780 F.2d 475, 479 (5th Cir. 1986) (en banc).

11

to the benefit and, therefore, no protected property right. *See Castle Rock,* 545 U.S. at 756. Da Vinci argues that the council members had no discretion to deny its development plan because it had met all the guidelines set forth in the ordinances. We find no such mandatory language. Neither in its pleadings nor its brief does Da Vinci cite any explicit language in the ordinances requiring, for example, the city council to grant a development plan application when all guidelines are met. While Da Vinci is correct that section 9-300(E)(9) of the ordinances states that "[n]othing listed [in the guidelines] shall limit the Council's ability to require more restrictive standards necessary to protect the public's health, safety and welfare," that language does not require the council to approve a development plan application that meets all the guidelines.

Because there is no "explicitly mandatory language" in the ordinances requiring city officials to approve a development plan, even where a plan meets all required guidelines, the city council had discretion to grant or deny the benefit. Accordingly, Da Vinci did not have a protected property right in the approval of its development plan.[5]

Without a protected property interest, there can be no substantive due process violation. *See Simi Inv. Co.,* 236 F.3d at 249-50. Because no constitutional violation has been shown, we need not address the second prong

---

[5] Da Vinci also argues that "Texas courts have also held that, although the granting of permits is generally considered a privilege and not a right, if one meets the required criteria to obtain a permit, it may not be lawfully refused, thereby becoming a right." With one exception, none of the Texas state cases cited by Da Vinci for support of this argument addresses protected property rights for due process purposes. The case that does address constitutionally protected property rights supports our holding. In that decision, the court stated that "whether a property-holder possesses a legitimate claim of entitlement to a [land-use] permit or approval turns on whether, under state and municipal law, the local agency lacks all discretion to deny issuance of the permit or to withhold its approval." *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty., Hous. Fin. Corp.,* No. 4:02-CV-478, 2005 WL 548104, at *18 (N.D. Tex Mar. 9, 2005) (quoting *Gardner v. Baltimore Mayor and City Council,* 969 F.2d 63, 68 (4th Cir. 1992)).

of qualified immunity.  The council members are entitled to qualified immunity on Da Vinci's substantive due process claim.

## B.    *Equal Protection Claim*

The district court held that Da Vinci pleaded sufficient facts to establish that the council members' conduct violated Da Vinci's "clearly established constitutional right to equal protection in application of these land-use regulations," and the law was "clearly established . . . at the time of the challenged actions in this case."

The Supreme Court has recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citation omitted).

Da Vinci argues the district court was correct as it sufficiently pleaded that it was treated differently than other similarly situated landowners without a rational basis.  Da Vinci pleaded that it was treated differently than the "Cooper Project," a development plan for a car wash facility that was approved by the city council less than two years before Da Vinci's application.  In light of this, Da Vinci argues, there was no rational basis for the council members to deny its development plan application.  As to whether the right was clearly established, Da Vinci argues that, at the time of the alleged acts, "this court had clearly established that different treatment of similarly situated parties without a rational basis was a violation of equal protection rights."

The council members failed in their initial brief to make any argument on Da Vinci's equal protection claim.  They discuss the Cooper Project in their reply brief in the context of their absolute immunity claim, but "[a]rguments

raised by appellants for the first time in reply briefs are waived." *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 420 (5th Cir. 2014).

We conclude Da Vinci's well-pleaded facts, which we must accept as true, "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Accordingly, the district court's conclusion that Da Vinci sufficiently pleaded its equal protection claim was proper.

On the second part of the qualified immunity analysis, Da Vinci argues that the law surrounding the violation of equal protection rights under facts similar to those at hand is clearly established and cites several cases of this circuit. We agree with the district court that "[i]n the context of land-use decisions, a 'class of one' equal protection claim was clearly established . . . at the time of the challenged actions in this case." *See, e.g., Olech,* 528 U.S. at 564 (holding an equal protection claim sufficiently stated where the plaintiff alleged the municipality intentionally treated similarly situated property owners differently without a rational basis); *Mikeska v. City of Galveston*, 451 F.3d 376, 381-82 (5th Cir. 2006) (reversing summary judgment for the defendant city on an equal protection claim involving a land use decision and noting that the plaintiff "must show that the difference in treatment with others similarly situated was irrational"); *Bryan*, 213 F.3d at 276 (noting that "[a]s a prerequisite to [an equal protection claim], the plaintiff must prove that similarly situated individuals were treated differently").

Because Da Vinci has pleaded facts sufficient to overcome the council members' qualified immunity defense on its equal protection claim, the district court's denial of the council members' motion for judgment on the pleadings on this claim is affirmed.

IV.    *Discovery Order*

After denying the council members' motion for judgment on the

pleadings, the district court ordered discovery "limited to . . . issues relating to Individual Defendants' assertions of absolute, qualified, and official immunity in defense of the claims asserted against them[.]"[6]    It also ordered that "[s]ummary judgment motions based on immunity, if any," were to be filed by a specific date.

Once qualified immunity is raised as a defense, a district court generally should not permit discovery until the immunity issues have been addressed. "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "If [a] complaint alleges facts to overcome the defense of qualified immunity, the district court may then proceed . . . to allow the discovery necessary to clarify those facts upon which the immunity defense turns." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995). We see no reason to treat discovery questions differently when absolute immunity is claimed.

Here, the district court concluded that Da Vinci pleaded sufficient facts to overcome the council members' entitlement to absolute and qualified immunity. It then ordered limited discovery to explore the factual basis for the claims of immunity. We have affirmed the district court's holding that Da Vinci pleaded sufficient facts to overcome the council members' entitlement to a dismissal based on absolute and qualified immunity on the equal protection claim. The council members do not assert that discovery would exceed the narrow focus appropriate for the immunity issues. Instead, they argue that any discovery will intrude into the integrity of the legislative process by examining their motives, knowledge, and the like. We reject that argument as

---

[6] The district court also ordered discovery on "issues relating to Plaintiff's claims against the City of Arlington."

15

the decision in question was not a legislative one.  Discovery relating to the council members' assertions of immunity defenses on Da Vinci's equal protection claim is proper.  The council members are entitled to qualified immunity on Da Vinci's substantive due process claim, though, and discovery that pertains to that claim was not properly ordered.

\* \* \*

We AFFIRM the district court's denial of the council members' motion for judgment on the pleadings on Da Vinci's equal protection claim.  We REVERSE the district court's denial of the council members' motion for judgment on the pleadings on the substantive due process claim and hold that the council members are entitled to qualified immunity as to that claim.  As to the discovery order, we AFFIRM to the extent discovery relates to the equal protection claim but REVERSE as to the substantive due process claim.