**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

————

No. 17-11158

————

United States Court of Appeals
Fifth Circuit

**FILED**
August 27, 2018

Lyle W. Cayce
Clerk

DA VINCI INVESTMENT, LIMITED PARTNERSHIP; DANIEL GRIFFITH,

Plaintiffs-Appellants

v.

CITY OF ARLINGTON, TEXAS,

Defendant-Appellee

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DANIEL GRIFFITH,

Plaintiff-Appellant

v.

CITY OF ARLINGTON, TEXAS,

Defendant-Appellee

————

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CV-971

————

No. 17-11158

Before GRAVES and COSTA, Circuit Judges, and BENNETT, District Judge.*

PER CURIAM:**

Plaintiffs Da Vinci Investment Limited Partnership and Daniel Griffith sued the City of Arlington claiming violations of their substantive due process and equal protection rights under 42 U.S.C. § 1983. Da Vinci also claimed that an unlawful taking occurred under the Texas Constitution. The City of Arlington filed a motion for summary judgment. The district court granted the motion. This appeal followed. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a proposed development plan to build a car wash in Arlington, Texas. In 1991, Da Vinci purchased approximately 12 acres of undeveloped land in Arlington and obtained a zoning change on the property to "planned development" ("PD"). PD zoning provides that property can only be developed in accordance with an approved development plan. Over several years, Da Vinci developed and sold portions of the land. The land at issue in this appeal is Da Vinci's sole remaining tract (the "Lot"). In 2012, Da Vinci contracted with Daniel Griffith to purchase the Lot; the purchase was conditioned upon approval by the City of a development plan to build a car wash. Pursuant to the PD zoning, a car wash was a permitted use on the Lot. In February 2013, the City conducted a review and found that the proposed development plan for a car wash was unlikely to have a negative effect on the location and was consistent with the surrounding uses. In March, Da Vinci and the purchaser submitted a formal development plan application for the

---

* District Judge for the Southern District of Texas, sitting by designation.

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Lot. That same month, a City staff report found that the plan complied with the minimum commercial design standards and would have no impact on traffic. Conversely, there was significant opposition to the development plan from real estate developer Jim Poynter and two former city officials. These individuals sent emails to the council members stating their objections and sometimes attaching letters of opposition from community members.

In May, after a public hearing, the planning and zoning commission recommended against approving the development plan because it did not mitigate compatibility problems and it did not enhance the neighborhood. Appellants appealed the commission's decision to the city council; the council agreed to hear the appeal.

In August, the city council conducted a public hearing to consider the development plan. The hearing consisted of, among other things, a presentation by Da Vinci and citizens who spoke both for and against the plan. At the conclusion of the hearing, the council voted to deny the development plan application by a vote of 5-4. Council Member Parker, who made the motion to deny the proposed development plan, gave three reasons for the denial: (1) the plan failed to mitigate compatibility issues; (2) the plan failed to enhance the neighborhood; and (3) the plan failed to mitigate the concerns of a majority of the neighbors.

In November 2013, Da Vinci filed suit against the City and several other parties in state court. The case was removed to the United States District Court for the Northern District of Texas. Later, Griffith filed his lawsuit against the same defendants and the district court ordered the two cases consolidated. After consolidation, the City filed a motion for summary judgment asserting that Appellants' Substantive Due Process and Equal Protection claims, Da Vinci's taking claim under state law, and Griffith's

state constitutional claims and exemplary damages claims all failed as matter of law. The district court judge granted the City's motion.  Da Vinci and Griffith filed a timely appeal challenging all rulings made by the district court except the grant of summary judgment on Griffith's state constitutional and exemplary damages claims.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 297 (5th Cir. 2017). Summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. ——, ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (per curiam). We construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *R & L Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

### I. Substantive Due Process

"To prevail on a substantive due process claim, [a plaintiff] must first establish that it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co., v. Harris Cnty.,* 236 F.3d 240, 249–50 (5th Cir. 2000). "To have a property interest in a benefit," a plaintiff must "have a legitimate claim of entitlement to it;" relevant entitlements are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) (citation and quotation marks omitted). If the benefit may be granted or denied at the discretion of government officials, it

is not an entitlement. *Id.* Courts look for "'explicitly mandatory language,' *i.e.* specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ridgely v. FEMA,* 512 F.3d 727, 735–36 (5th Cir. 2008) (quoting *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).

As noted by this Court in a previous appeal of this same case, if, under the ordinances, city council members could "grant or deny [a development plan application] in their discretion," there was no entitlement to the benefit and, therefore, no protected property right. *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 370 (5th Cir. 2015) (quoting *Castle Rock*, 545 U.S. at 756). Da Vinci argues that the council members had no discretion to deny its development plan because it had met all the guidelines set forth in the ordinances. We again find no such mandatory language. *See Da Vinci*, 622 F. App'x at 370 (finding in a prior appeal that Da Vinci failed to point to mandatory language in the ordinances still at issue). For a second time, Appellants fail to cite any explicit language in the ordinances requiring, for example, the city council to grant a development plan application when all guidelines are met. Because there is no "explicitly mandatory language" in the ordinances requiring city officials to approve a development plan, even where a plan meets all required guidelines, the city council had discretion to grant or deny the benefit. Accordingly, Appellants did not have a protected property right in the approval of its development plan.

Without a protected property interest, there can be no substantive due process violation. *See Simi Inv. Co.,* 236 F.3d at 249–50. Accordingly, the district court's grant of summary judgment on this claim was appropriate.

## *II. Equal Protection Claim*

Da Vinci and Griffith both bring a "class of one" theory Equal Protection claim. Under a "class of one" Equal Protection claim, a plaintiff must allege that he/she has been intentionally treated differently from others similarly situated and that there was no rational basis for the differential treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (establishing the "class of one" Equal Protection analysis).

Appellants argue that their development plan application was treated differently than the application of Cooper Carwash. The district court found that Cooper Carwash was not similarly situated, and, even if it was, the City had a rational basis for the differential treatment.  The undisputed facts show the following comparisons between the two projects: (1) both lots were to be used as a carwash; (2) Appellants' development involved a 1.45-acre lot while the Cooper Carwash development involved a 1.3 acre lot, but  was submitted as part of a development plan for a 5.149-acre property; (3) the City had once owned part of the land in the Cooper Carwash property; (4) Appellants' development was to be a standalone carwash with twenty-six vacuum stalls, while Cooper Carwash had a QuikTrip convenience store incorporated into the development plan; (5) Appellants' development would have built a carwash on a vacant lot, while Cooper Carwash involved the redevelopment and demolition of old stores, dry cleaners, and apartment buildings, some of which were abandoned; (6) Appellants' development plan was decided on August 6, 2013, and Cooper on December 6 and 13, 2011; (7) the makeup of the city council was different during the consideration of Appellants' development and Cooper Carwash; (8) differences in the surrounding areas associated with the two lots existed; and (9) Appellants'

development had approximately twenty people opposed to the plan, while Cooper Carwash had just two.

Under a rational basis review, a court affords governmental decisions a "strong presumption of validity," and will uphold a governmental decision "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe,* 509 U.S. 312, 319–20 (1993). Moreover, "the range of rational grounds is not restricted to those articulated at the time the [government] made its decision," but encompasses all conceivable bases, actual or hypothesized. *Reid v. Rolling Fork Pub. Util. Dist.,* 854 F.2d 751, 754 (5th Cir. 1988). "As long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not actually relied upon by the decision-makers or that some other nonsuspect irrational factors may have been considered." *Id.* (emphasis in original). "[D]ecisions that are imprudent, ill-advised, or even incorrect may still be rational." *Rossi v. West Haven Bd. of Ed.,* 359 F. Supp. 2d 178, 183 (D.Conn. 2005); *see also Smith v. City of Chic.,* 457 F.3d 643, 652 (7th Cir. 2006) (holding that "an incomplete, inadequate, or inaccurate explanation" for the government's decision in a "class of one" case "will not equate to a lack of rational basis, otherwise 'the federal courts would be drawn deep into the local enforcement of . . . state and local laws.'") (quotation omitted).

Here, the city council member that made the motion to deny the application stated several reasons for denying the development plan, including that the proposed development did not enhance the neighborhood or address the concerns of the neighbors. Multiple neighbors had expressed concerns about the development plan. Some of those concerns were about an increase in noise, lack of adequate screening, traffic, and the closeness to an

elementary school.  Further, as laid out above, the ordinances do not contain explicitly mandatory language requiring approval if certain conditions are met.  As such, and given the fact that one of the purposes of the regulations is to "provide development which enhances neighborhood areas," denying the application for the purposes articulated by the City was rationally related to a legitimate government purpose under the circumstances. Additionally, the differences between Cooper Carwash and Appellants' development, described above, suggest that there was a rational basis for the different outcome. "The lack of similarly situated comparators will often provide a rational basis for the difference in treatment." *Lindquist v. City of Pasadena, Tex.*, 656 F. Supp. 2d 662, 691 (S.D. Tex. 2009), *aff'd sub nom., Lindquist v. City of Pasadena Texas*, 669 F.3d 225 (5th Cir. 2012).  As Appellants failed to show that the City lacked a rational basis for its decision to deny the development plan, the district court's grant of summary judgment was appropriate.

### III. Takings Claim

Texas courts generally recognize three types of takings: (1) where there is a physical occupation of the land; (2) where the government exacts part of the land; and (3) where government regulations cause a diminution in the value of the land.  *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 630 (Tex. 2004).  Da Vinci argues that the actions taken by the City in this case constitute a regulatory taking under Texas law.

A regulation may be a taking when it deprives the owner of all economically beneficial uses of the land.  *Sheffield Dev. Co., Inc. v. City of Glen Heights*, 140 S.W.3d 660, 671 (Tex. 2004).  If the regulation does not, then Texas courts have generally looked to the three factors described by the United States Supreme Court in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 104 (1978), to guide their analysis.  *E.g. Sheffield*,

140 S.W.3d at 672; *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 644 (Tex. 2013); *Hearts Bluff Game Ranch, Inc. v. State,* 381 S.W.3d468, 478 (Tex. 2012).  The evidence presented with the motion for summary judgment undisputedly shows that Da Vinci's property retained some value.  As such, applying the *Penn Central* factors to the alleged taking is appropriate.  Those factors are: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment backed expectations; and (3) the character of the governmental action."  *Sheffield*, 140 S.W.3d at 672 (quoting *Connolly v. Pension Benefits Guar. Corp.*, 475 U.S 211, 225 (1986) (inner quotation marks omitted).  Importantly, these factors are not the only consideration given to a regulatory taking claim.  As explained by Justice Sandra Day O'Connor: "*Penn Central* does not supply mathematically precise variables, but instead provides important guideposts" to aid courts in determining whether a taking has occurred and compensation is due.  *Palazzolo v. Rhode Island*, 533 U.S. 606, 634, 121 S. Ct. 2448 (2001) (O'Connor, J., concurring). Ultimately, the Court must consider "all of the surrounding circumstances" and employ a "fact-sensitive test of reasonableness." *Sheffield*, 140 S.W.3d at 672–73 (quoting *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984)).

Here, though the value of Da Vinci's property was undoubtedly reduced by the denial of its development plan application, the zoning and allowable uses of the property never changed.  As before, the property is still zoned for commercial development and it may be developed.  Also like before, this ability is subject to the City's approval of a development plan.  As the zoning of the lot in question has not changed, this Court cannot find reasonably held investment-backed expectations were affected by the City enforcing restrictions in place when such investments were made.  Likewise, Da Vinci

cannot show the character of the government action was severe enough to justify a compensable taking under Texas law.  As such, the district court's grant of summary judgment as to Da Vinci's takings claim was appropriate under the applicable law.

## CONCLUSION

For the foregoing reasons, the district court was correct in granting summary judgment on all the claims at issue.  Accordingly, We AFFIRM the district court's grant of summary judgment.